## MARTIN v. STATE OF INDIANA.

[No. 29,338. Filed April 2, 1957. Rehearing denied April 30, 1957. Writ of Certiorari to U. S. Supreme Court denied June 21, 1957.]

*Milton Siegel,* of Indianapolis, for appellant.

*Edwin K. Steers,* Attorney General and *Owen S. Boling,* Deputy Attorney General, for appellee.

EMMERT, J.—This is an appeal from a judgment convicting appellant of robbery, sentencing him to the Indiana State Prison for not less than ten (10) ■ nor more than twenty-five (25) years, and disfranchising him and rendering him incapable of holding any office of trust or profit for ten (10) years. The original affidavit charged the accused and three others as accomplices, but the cases of two were severed for purposes of trial. The errors assigned are the overruling of the accused's motion for new trial and his amended motion for new trial. As the verdict was returned on April 14, 1955, and the amended motion for new trial was not filed until May 16, 1955, all new specifications of error urged in that motion are waived. *Kallas* v. *State* (1949), 227 Ind. 103, 83 N. E. 2d 769; *Abeele* v. *Ruse* (1942), 112 Ind. App. 596, 601, 44 N. E. 2d 235. The only question not waived is the sufficiency of the evidence to support the verdict.

The evidence most favorable to the State reveals the following: Shortly after 7:30 A.M., Central Standard

Time, on July 26, 1954, the accused and another man were observed coming onto a used car lot at 960 North Meridian Street in Indianapolis by an employee, Mr. Robert Hogan. The second man was identified in court by the witness Hogan as one of the two persons charged in the affidavit but not tried with the accused. Mr. Hogan saw the two men enter the small office on the lot; a few minutes later, hearing a commotion in the office and the manager calling for help, he started toward it. Through a large window in the office he saw the accused "holding a gun on Mr. Gillis," the manager. Then a man whom he identified as the co-accused, Sarkozy, came up behind him, thrust a gun into his side and ordered him to move toward the office, which he did. As they approached the office there was a scuffle inside and Mr. Gillis broke out of the office and ran between several cars and out of the lot. As he did so the witness noticed a fourth man standing on the sidewalk. The accused "herded" the witness into the office and stood with the gun pointed at Mr. Hogan without saying anything until suddenly all the intruders broke and ran out of the back of the lot.

Mr. Gillis was unable to identify any of the persons involved. He was seated at his desk completing a contract when two men entered with guns and ordered him to place his wallet, which contained $55.00, on the desk. They also told him to take off his diamond ring. He replied that he couldn't get it off and "They said, we have ways of getting it off." He was told to stand up and then was shoved toward the front of the office. He grabbed for the door and, after a scuffle during which he was hit on the head with a pistol and his shirt was torn, he managed to break out of the door and get away. As he ran he noticed a third man with his employee, Mr. Hogan, and a fourth man on the sidewalk.

At about 8:00 A.M., Central Standard Time, on the same day two police officers of the Indianapolis Police Department were in a "regular police car" in the vicinity of Victory Field, a ball park some two and one-half to three miles from 960 North Meridian Street, as a result of a complaint that "there had been a safe job" in that area. They noticed four men walk down the road, then turn off toward a river in the immediate vicinity and disappear over a rise or "bank." When the two policemen came over the bank they saw five instead of four men. One came toward them. They identified themselves as policemen and ordered him to turn around and join the other four so that they could be questioned together. The man complied and they had started toward the group of four when suddenly the four men opened fire at the police officers with revolvers. In the ensuing gun battle one police officer was wounded and all five men escaped. Neither officer could state that the accused had fired a gun at them, but both identified him, his co-defendant and the other two men charged in the affidavit as the four men whom they saw originally on the road.

The accused was apprehended in the same general area a short time later by another police officer who came to the scene in response to a call. Before surrendering the accused fired at the police officer who made the arrest; there was a short gun battle, then he pitched out his empty revolver with the statement "I've got enough. You are comin' too damn close." He also said that "there were five of them down here, they had come in on the bus the night before that and that his name was Nick Martin." The other men named in the affidavit were apprehended separately and one-by-one in the same general area. Upon searching one of them, Joseph Horay, who was not tried with the accused, the

police discovered a wallet which Mr. Gillis identified as the one which had been taken from him at gun point.

This court has recently emphasized the dangers of convictions based upon identification of the accused by a single witness who is a stranger to him. See ▮▮ *Baker* v. *State* (1956), 236 Ind. 55, 138 N. E. 2d 641. We stated there that it is our duty on review of a criminal conviction for the sufficiency of the evidence to determine whether a "prudent man could find appellant had been proved guilty beyond a reasonable doubt." 138 N. E. 2d at 648. Here the identification made by Mr. Hogan, the employee, was based on his observation of the accused during the day. The sun was shining. The witness testified that the first time he saw the accused after the robbery was when he picked him out of a police line-up. The only material discrepancies established on cross-examination between his statement at the hearing on bail and his testimony at the trial related to the distance between himself and the accused when the accused first came on the lot and the color of the suit which the accused wore at the time of the robbery. Moreover, his identification is strongly corroborated by other evidence. The accused's armed resistance to arrest is evidence of guilt, though not necessarily guilt of the crime charged. See 2 Wigmore, Evidence (3rd Ed.), §276 (4), p. 111 *et seq.* But his resistance in connection with, and together with, one from whom the stolen wallet was recovered ties him to the robbery with which he is charged. When the record is viewed as a whole, the credibility of the identifying witness must be considered an issue for the jury.

The judgment is affirmed.

Achor, C. J., Arterburn, Landis and Bobbitt, JJ., concur.

NOTE.—Reported in 141 N. E. 2d 107.