GEORGE QUINE HAYNES *v.* STATE OF INDIANA.

[No. 3-872A46. Filed March 12, 1973.]

*Edward V. Minczeski,* of South Bend, for appellant.

*Theodore L. Sendak,* Attorney General, *A. Frank Gleaves, III,* Deputy Attorney General.

SHARP, J.—The Appellant was charged by way of affidavit in three counts. In Count 1 he was charged with the placing of combustibles to destroy property under IC 1971, 35-16-1-5, Ind. Ann. Stat. § 10-305 (Burns 1956). Count 2 of the affidavit charged the Appellant with the offense of conspiracy to commit a felony, to-wit: Second Degree Arson under IC 1971, 35-1-111-1, Ind. Ann. Stat. § 10-1101 (Burns 1956). Under Count 3 Appellant was charged with the offense of entering to commit a felony, to-wit: Second Degree Arson. The crime of entering to commit a felony is defined in IC 1971, 35-13-4-5, Ind. Ann. Stat. § 10-704 (Burns 1956). The offense of second degree arson is defined in IC 1971, 35-16-1-2, Ind. Ann. Stat. § 10-302 (Burns 1956). (We have adopted the above designation of the three counts upon which Appellant went to trial. Other counts were filed and dismissed by the trial court.)

Trial was had to the jury which found the Appellant guilty on all three counts. Thereafter, the Appellant was sentenced on Count 1 to a term of one to three years, he was sentenced on Count 2 to a term of two to fourteen years, and was sentenced to a term of one to ten years on Count 3.

The four issues presented for review are:

(1) Whether the Appellant was denied a fair trial by not having counsel appointed to represent him.
(2) Whether the evidence was sufficient to sustain the verdict.
(3) Whether the trial court erred in giving certain instructions.
(4) Whether the trial court erred in denying Appellant's petition for a determination of sanity by the jury.

An examination of the record reveals that at approximately 1:00 A.M. on May 24, 1970, Robert Luchowski, Richard Feingold and Charles Lehman arrived by car at the Indiana

University Auditorium at South Bend so that Luchowski could see a friend who worked there. As they drove into the parking lot, they noticed a figure in the doorway. Luchowski went into the building where he saw a man wearing a black mask, who, upon being noticed, turned and ran. Luchowski called to Feingold and Lehman for assistance and they entered the building and all proceeded to the auditorium stage. When they were at the stage, they encountered Appellant and his companion, Richard Johnson, both of whom were armed, one with a knife and the other with a bayonet, which they brandished in a threatening manner. Luchowski recognized one of the men as the Appellant, George Quine Haynes. Lehman and the others noticed several cans which indicated they contained combustible petroleum products. Lehman pointed to one such can and asked Appellant "Is this yours?", to which Appellant remarked "It could be." Finally Appellant asked Lehman "if we couldn't just forget it." A check by a student security guard just minutes before this incident had disclosed no such cans containing combustibles. The guard also stated that at the completion of his rounds, just shortly before 1:00 A.M., all windows and doors were locked, and no other persons were in the building.

Further investigation by the police revealed a ladder leaning against the building for access to the roof, where there was a trap door leading to one of the classrooms. The police also found black shoe marks on the wall. Samples of the fluid taken from the containers proved to be gasoline. Both Appellant and his companion fled the scene before the police arrived. Appellant was subsequently arrested in Attica, New York.

## I

The Appellant first contends that he was denied a fair trial because the trial court permitted him to proceed with the trial without appointing counsel for him.

Appellant was represented by counsel through most of the

preliminary proceedings. On September 10, 1971 Appellant's counsel asked leave to withdraw his appearance. There was no objection on the part of the Appellant. Thereafter the cause was set for trial on December 13, 1971, and on that date Appellant appeared and informed the court that he wished to represent himself. The trial court conducted a specific in-court interrogation of the Appellant before the trial commenced. On three separate occasions during this interrogation the Appellant stated that he desired to represent himself and did not want or request an attorney. Appellant was also advised that an attorney would be appointed to represent him if he was without funds to employ such an attorney. At the end of this inquiry the following exchange occurred:

"The court: You're out on cash bail?

The Defendant: No and I don't want an attorney anyway. I rather defend myself.

The court: You want to defend yourself?

The Defendant: Yes.

The court: You don't want the court to appoint an attorney anyway?

The Defendant: No, I don't."

Although a criminal defendant's constitutional right to be represented by counsel at trial has long been recognized and studiously preserved, it has been recognized that such a defendant may waive his constitutional right to counsel. *Placencia* v. *State* (1971), 256 Ind. 314, 268 N.E.2d 613, and cases cited therein. The burden, however, is upon the State to affirmatively show that the criminal defendant knowingly, intelligently and understandingly waived his right to counsel. *Fitzgerald* v. *State* (1970), 254 Ind. 39, 257 N.E.2d 305. If he is not financially able to employ counsel, it is the duty of the court to appoint a competent attorney at public expense. *Fitzgerald* v. *State, supra; State* v. *Minton* (1955), 234 Ind. 578, 130 N.E.2d 226. But the defendant, even if indigent, cannot be compelled to accept the appoint-

478

ment of counsel against his will. *Placencia* v. *State, supra;* *Gates* v. *State* (1962), 243 Ind. 325, 183 N.E.2d 601.

We believe that the colloquy between the Court and Appellant adequately demonstrates that the Appellant knowingly, intelligently and understandingly waived his constitutional right to counsel. Appellant now contends, however, that somehow the inquiry by the court as to whether the Appellant had sufficient funds to hire an attorney in light of the fact that Appellant was out on cash bond and had previously hired an attorney, confused Appellant to the extent that waiver was not clear and intelligent. The required interrogational format for a determination of the necessity to appoint counsel and the related standards for acceptance of a guilty plea were recently set forth in *DeFrisco* v. *State* (1972), 153 Ind. App. 609, 288 N.E.2d 576. In *DeFrisco* the defendant was *not advised* by the trial court during arraignment proceedings that legal counsel would be appointed for him if he did not have the means to obtain private counsel. Here, the Appellant was so advised and the record here shows substantial compliance with the *DeFrisco* case.

First of all, we believe that the trial court, in light of the surrounding circumstances acted correctly in first determining whether the Appellant had sufficient funds to hire an attorney.

A reading of the exchange clearly demonstrates that Appellant from the beginning until the end, persistently indicated his desire to proceed to trial without benefit of counsel.

Appellant next contends that his case was seriously prejudiced by lack of counsel. In *Placencia* v. *State, supra*, at page 614 of 268 N.E.2d, our Supreme Court stated:

"In such a case the accused must take the consequences of his own deliberate act and is presumed to accept the burden and hazards incident to his position. See, *Franklin* v. *State* (1955), 234 Ind. 418, 126 N.E.2d 768; *Blanton* v. *State* (1951), 229 Ind. 701, 98 N.E.2d 186.

Here the appellant was advised on several occasions that he had the right to be assisted by trial counsel; nevertheless he chose to proceed pro se. In such a situation it is reasonable to presume that the implications and consequences have been considered by the accused and that his decision is a conscious election to assume the risks incident to a trial conducted without the benefit of counsel. One such risk clearly is the development of circumstances with which the accused will be incapable of coping. Nevertheless he has made a decision which we feel can reasonably be construed to be binding throughout the course of the trial."

We, therefore, hold that Appellant was not denied a fair trial because he was not represented by counsel.

## II

Appellant next contends that there was insufficient evidence to sustain the verdict. Appellant argues that evidence is lacking on the necessary elements of the three crimes in that there is no evidence that Appellant entered the building with the intent to set said building on fire. Even if the cans of combustibles are connected with Appellant, it is urged that there is not one circumstance to indicate what the intended disposition of the materials was to be. Thus, the Appellant's primary argument as to all three convictions is that they are based on circumstantial evidence.

A conviction, however, may be sustained by circumstantial evidence alone. *Vaughn* v. *State* (1971), 255 Ind. 678, 266 N.E.2d 219. In this case Appellant was caught inside the building in the same area that contained the cans of combustible materials. Neither the cans nor Appellant had been there when the guard made his rounds a few minutes before. The Appellant and his companion were both armed and brandished their weapons in a threatening manner. They also attempted to induce their discoverers to keep quiet. Both Appellant and Johnson fled the scene before

the police arrived and Appellant thereafter left the State of Indiana.

The jury was entitled to take into consideration as evidence of guilt, both the flight of Appellant, *Turner* v. *State* (1970), 255 Ind. 427, 265 N.E.2d 11, and the fact that Appellant was armed and acted in a threatening manner. *Martin* v. *State* (1957), 236 Ind. 524, 141 N.E.2d 107.

The foregoing evidence, although circumstantial, clearly supports the inference of entry with intent to commit arson. We cannot say that the circumstantial evidence and the reasonable inferences to be drawn therefrom are insufficient as a matter of law. The test for the examination of circumstantial evidence was recently reaffirmed by our Supreme Court in *McAfee* v. *State* (1973), 259 Ind. 687, 291 N.E.2d 554, wherein the court stated:

> "Where the sufficiency of the circumstantial evidence is concerned, we examine it carefully, not for the purpose of finding whether it was adequate to overcome every reasonable hypothesis of innocence, but with the view of deciding whether an inference may be reasonably drawn therefrom tending to support the finding of the trial court."

We hold that there was sufficient evidence in the record to support the verdict as to the placing of combustibles and entering to commit a felony. See *Johnson* v. *State* (1972), 258 Ind. 683, 284 N.E.2d 517, which was a companion case that arose out of the same incident. The comment of Justice Givan, speaking for the majority, is revealing and relevant:

> "In the case at bar the appellant and his companion were actually caught inside the building. The cans containing the combustible material were found in the same area. They had not been there a few minutes before when a guard had made his rounds. When approached, the appellant and his companion threatened the three men who had discovered their presence by brandishing weapons. They also attempted to induce the men to forget the incident. They then fled the scene before police officers arrived." 284 N.E.2d 518 (1972).

In regard to the verdict of guilty of conspiracy to commit a felony, the evidence is equally compelling. It is not essential that the felony actually be committed in order to prove conspiracy. *Taylor* v. *State* (1956), 235 Ind. 126, 131 N.E.2d 297. Proof of conspiracy may be inferred from acts and conduct of persons accused, done in pursuance of an apparent criminal or unlawful purpose in common between them. *Smith* v. *State* (1960), 241 Ind. 311, 170 N.E.2d 794.

The circumstantial evidence lends itself to the strong inference that Appellant and Johnson conspired to set fire to the building and that they entered the building with the intent to carry out the conspiracy. We hold that there was sufficient evidence to support the verdict of conspiracy to commit a felony.

## III

The Appellant next claims that the trial court committed reversible error by giving State's Instructions No. 5 and No. 6. But the instructions to which the Appellant now objects are not incorrect statements of the law. Instructions No. 5 and No. 6 read as follows:

"Instruction No. 5

"Proof of the existence of a conspiracy does not need to rest solely on words giving rise to an express agreement, but may be inferred from acts and conduct of the persons accused done in pursuance of an apparent criminal or unlawful purpose in common between them."

"Instruction No. 6

"The intent to commit the crime charged may be inferred from the surrounding circumstances."

The State's Instruction No. 5 is identical to language used in *Smith* v. *State, supra,* a case which Appellant has cited in his brief. We find no error in the giving of State's Instruction No. 5.

In regard to State's Instruction No. 6, Appellant recognizes and concedes that it is an appropriate instruction in some cases. See *Watson* v. *State* (1970), 255 Ind. 348, 264 N.E.2d 616, and *Tuggle* v. *State* (1969), 253 Ind. 279, 252 N.E.2d 796. Appellant argues, however, that the facts of this case somehow make the instruction inappropriate. We disagree and hold that State's Instruction No. 6 was an accurate statement of the law and no error was committed in the giving of such instruction.

## IV

Finally, Appellant urges that the trial court erred in denying Appellant's petition for determination of sanity by the jury. The Appellant was found guilty on December 14, 1971. On January 5, 1972 the Appellant, in person and by counsel, filed a petition to obtain a mental examination of the Appellant. After a series of delays, all agreed to by Appellant and his counsel, the record further discloses that Appellant was examined by two psychiatrists who filed their reports with the trial court. (For reasons best known to Appellant and his counsel the full written reports of these two psychiatrists have not been made a part of the record here.) Thereafter, on March 14, 1972 Appellant petitioned for the appointment of a psychiatrist for a further examination, which was denied by the trial court. At that time the following occurred:

"The Court: Defendant files petition for appointment of psychiatrists.

Mr. Roper: The petition is for one psychiatrist.

The Court: One psychiatrist and in reading the psychologist's report there is no conflict with the psychiatrist."

The rule with respect to this issue was announced in *Sims* v. *State* (1965), 246 Ind. 660, 208 N.E.2d 469, 472, as follows:

"Since the issue of insanity was not formally presented by appellant prior to the trial as provided by § 9-1701, supra, a determination of the issue under the statutes relied upon

§§ 9-1706a and 9-2217a, supra, was discretionary with the court.

In considering this issue on motion for new trial, the court had ample reason to believe that, although appellant may have had a history of 'erratic behavior', and although his conduct in the courtroom was obstreperous, there are no facts alleged or in evidence which require a conclusion that appellant was insane, within the meaning of the law, either at the time of the offenses or during the preparation for his trial. We find no reversible error upon this issue."

In this case there was no prior presentation of the issue of insanity, and the record is devoid of evidence of a history of "erratic behavior" or of obstreperous behavior in the courtroom. The trial court did not abuse its discretion and we find no reversible error.

Although it has not been raised here by the Appellant it would appear that the sentence of one to ten years on Count 3 exceeds the permissible maximum sentence for the offense charged in Count 3 under recent decisions of our Indiana Supreme Court and this court. In *Lee* v. *State* (1972), 259 Ind. 301, 286 N.E.2d 840, our Supreme Court appears to have held that the maximum sentence for "entering with intent to commit a felony" may not exceed the sentence prescribed for the offense of second degree burglary, the maximum sentence permissible being a term of one to five years. This court has meticulously attempted to follow *Lee* v. *State, supra,* in *Goodwin* v. *State* (1972), 153 Ind. App. 203, 286 N. W. 2d 703; *Paschall* v. *State* (1972), 152 Ind. App. 408, 283 N.E.2d 801; *Wilson* v. *State* (1973), 155 Ind. App. 100, 291 N.E.2d 570; and *Harrison* v. *State* (1973), 155 Ind. App. 231, 292 N.E. 612. The net result of *Lee* and the cases following it seem to be that if a defendant is convicted of the offense of "entering to commit a felony" the maximum sentence permissible is a term of one to five years regardless of the sentence that might be imposed for the felony such defendant was entering to commit. For an extreme example, under the holding of *Lee* if the

defendant was convicted of entering to commit a felony, to-wit: First Degree Murder and found guilty of that charge alone his maximum sentence would be a term of one to five years. The results of a logical application of the *Lee* decision are well illustrated by the factual situations discussed in the other cited opinions of this court. Since it is our obligation to follow, as best we can, the decisions of the highest court of the State of Indiana we will attempt to do so in this case.

The conviction of the Appellant on Counts 1 and 2 as above described should be and hereby is affirmed. The conviction on Count 3, as above described, is also affirmed, but this cause must be and hereby is remanded to the trial court with instructions to enter a corrected sentence and commitment order on said Count 3 nunc pro tunc for imprisonment for not less than one nor more than five years.

Hoffman, C.J. and Staton, J., concur.