ANTHONY MAYNARD v. STATE OF INDIANA.

[No. 2-872A54. Filed September 18, 1973. Rehearing denied October 17, 1973.]

*Frederick B. Robinson,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Assistant Attorney General, for appellee.

SULLIVAN, J.—Anthony Maynard appeals from the denial of a Belated Motion to Correct Errors filed pursuant to Rule PC. 2. He alleges that his conviction for Entering to Commit a Felony was not supported by sufficient evidence, and also assigns as error denial of his Motion to Set Appeal Bond.

The evidence, when viewed most favorably to the State, reveals that:

On the evening of October 18, 1970, Maynard was in the home of one Phillip Baker. Also present were Baker, Michael Pedigo and Jesse Fredericks. Pedigo stated that he knew of a tavern which had $5,000.00 in a safe. During the enthusiastic discussion which followed, it was revealed that the safe was not actually in the tavern, but rather was located in the second floor residence of Basil E. Burton, who lived above the tavern,

It appears that at this time Maynard expressed his disapproval of the plan in that it constituted first degree burglary. However, all four men proceeded to the home of Mr. Burton above the tavern. Maynard drove the automobile, as the other three had no driver's licenses.

Notwithstanding his protestations that "he didn't want to have anything to do with it", Maynard continued to cooperate in the plan. Maynard remained in the driver's seat while the other three got out, telling them if they "were going to do it, to do it fast." The other three entered the apartment through a second floor window and wrestled the safe out the window, dropping it to the ground. Pedigo then returned to the street and asked Maynard to back the car up into the driveway. After this was done, the safe was placed in the car's trunk and the four drove away, Maynard berating them as idiots and asking it they knew how much time it carried (referring to the severity of the penalty for first degree burglary as opposed to second degree burglary).

After returning to Baker's home, Maynard called Bonnie Willis, stating that "some idiots stole a safe", and asking whether they could open it at her house. She assented, and the four took the safe to her home and there took turns attempting to open it. When the safe was finally opened, the evening's "haul" was discovered: a fifty cent piece, miscellaneous papers and two charge cards. (Alarmed by a recent burglary, Mr. Burton had the previous day removed $4050.00 in cash from the safe.) Maynard assisted in the disposal of the safe and its contents, with the exception of the two credit cards, which were kept by Jesse Fredericks.

Maynard was indicted by the Grand Jury of Marion County on March 29, 1971, on a charge of first degree burglary. A jury trial was had on August 2, 1971, Maynard being represented by counsel. On August 3, 1971, the jury returned a verdict of guilty of entering to commit a felony, and Maynard

was subsequently sentenced to one to ten years in the Indiana State Reformatory.

Maynard presents seven arguments in this appeal, six of which we view together and which argue that there was insufficient evidence to sustain the conviction. He also assigns as error the trial court's refusal to set appeal bond after Maynard was authorized to file his belated Motion to Correct Errors.

## THE EVIDENCE WAS SUFFICIENT TO SUPPORT THE CONVICTION

It is axiomatic that:

"When reviewing an appeal on sufficiency of the evidence, first, it must be remembered that this Court will not weigh the evidence nor determine the credibility of the witnesses. Only that evidence most favorable to the State and the reasonable inferences to be drawn therefrom will be considered. As long as there is substantial evidence of probative value sufficient to establish every material element of the crime beyond a reasonable doubt, the verdict will not be disturbed. *Jackson* v. *State* (1971), 257 Ind. 589, 275 N.E.2d 538; *Shelton* v. *State* (1972), 259 Ind. 559, 290 N.E.2d 47." *Burton* v. *State* (1973), 260 Ind. 94, 292 N.E.2d 790, 800-801.

Maynard points out that there is no evidence that he himself had ever entered the premises of the Burton apartment. Of course, it is unnecessary that there be proof that Maynard actually entered the apartment if it is established that one of the other men entered the dwelling with the intent to commit a felony therein, and that Maynard aided and abetted them in their endeavor.

IC 1971, 35-1-29-1, Ind. Ann. Stat. § 9-102 (Burns 1956) provides:

"Every person who shall aid or abet in the commission of a felony, or who shall counsel, encourage, hire, command, or otherwise procure a felony to be committed, may be charged

by indictment, or affidavit, tried and convicted in the same manner as if he were a principal, either before or after the principal offender is charged, indicted, or convicted; and, upon such conviction he shall suffer the same punishment and penalties as are prescribed by law for the punishment of the principal."

The testimony given by Burton, Pedigo, Fredericks and Miss Willis was clear and direct: the dwelling was entered, the safe was stolen and with Maynard's aid, it was opened at the Willis house.

Maynard apparently bases his argument upon two contentions: first, that having counseled against the burglary, he cannot be considered to have aided and abetted the crime. Secondly, that testimony as to his drunken condition during the evening of the burglary demonstrates that he was incapable of forming the intent which is an element of the crime.

Maynard's first argument presents a novel issue. It is not unusual for an accomplice to be held guilty as a principal when he does not actively aid the commission of the crime, but merely encourages it, even if only impliedly. *Schaffer* v. *State* (1930), 202 Ind. 318, 173 N.E. 229. Maynard, however, presents us with the converse: an accomplice who vocally discourages the commission of the crime and contemporaneously lends his active assistance thereto. It is our opinion that Maynard's exculpatory expostulations cannot void his responsibility for affirmative acts. A simple examination of the statute supports this conclusion. The necessary elements of an accessorial crime are phrased in the alternative: Maynard need only "aid . . . *or* encourage."

The direct testimony amply supports a conclusion that Maynard aided the burglary. He was present at the planning session; he drove the others to the scene of the crime; and waited while they entered the building. By merely driving off at that point in time, Maynard

would have not only ended his own participation, but effectively would have foiled the entire plan; the others, having no car or driver's licenses, would have been stranded with a rather conspicuous four hundred pound safe. However, Maynard not only remained, but moved the car closer to facilitate loading the safe. He continued to drive, suggested a place where the safe might be opened, called Miss Willis, conveyed the safe to her house, assisted in cracking it and helped dispose of the evidence. Maynard actively aided the burglary. There was no evidence of coercion. *Smithhart* v. *State* (1971), 256 Ind. 533, 270 N.E.2d 740.

Pedigo testified that Maynard had been drinking beer and was intoxicated. In speaking of voluntary intoxication as a defense, our Supreme Court has stated:

> "Voluntary intoxication is not a defense in a crmiinal proceeding and does not excuse or palliate crime. It is only when intoxication has occurred to the extent that a person is mentally incompetent so that he cannot form a specific intent where the crime charged involves a specific intent. One becoming intoxicated in order to acquire the confidence to commit a crime may not use such a condition as a defense." *Davis* v. *State* (1968), 249 Ind. 373, 376-377, 232 N.E.2d 867.

Whether a defendant was so intoxicated that he could not form the requisite intent is "a question of fact to be determined by the jury or court trying the case upon a consideration of all the evidence." *Cotton* v. *State* (1965), 247 Ind. 56, 61, 211 N.E.2d 158. The evidence was that Maynard operated the automobile all evening, presumably safely. He also was sober enough to distinguish between first and second degree burglary and recognize the severity of the consequences. The jury was entitled to conclude from all the evidence that Maynard was not so intoxicated as to be unable to form the requisite intent.

## APPELLANT'S ARGUMENT THAT BOND SHOULD HAVE BEEN SET IS WAIVED BY HIS FAILURE TO COMPLY WITH RULE AP. 8.3

Maynard's "argument" that the trial court should have set bail after granting his P.C. 2 petition is quoted in its entirety:

> "It is the Appellant's contention that when a Post Conviction Remedy is granted this has the effect of giving the Appellant the right to have a stay of the judgment against him just as if a Motion to Correct Errors had been filed for him within the proper time, thus commencing the Appellate procedure."

It has long been the rule in Indiana that appellants must do more than merely state their contention in the brief:

> "Various errors are assigned, but the appellant, in his brief, presents no argument or authority in support of them. He simply recites the assignment of errors as it stands on the record; and this being the fact, the cause before us must be deemed as without a brief. *Parker* v. *Hastings*, 12 Ind. 654. See also Rule 28 of this Court, Ind. Dig. p. 722. The errors assigned will not, therefore, be noticed." *Bennett* v. *State ex rel. Curry* (1864), 22 Ind. 147, 148.

The Indiana Supreme Court has recently reiterated this position in *Dortch* v. *Lugar* (1971), 255 Ind. 545, 575-576, 266 N.E.2d 25:

> ". . . appellant fails to cite any sections of the Act to verify our substantiate his bland assertion or does he give any indication of authority relied upon. We have said on occasions too numerous to require citation of authority that points raised by an appellant not "argued" in the argument section of his brief are deemed waived. By "argument" we mean a clear presentation of appellant's contentions with respect to the issues presented, the reasons in support of the contentions with any applicable citation to authorities, statutes, and parts of the record relied upon, and a clear showing of how the issues and contentions relate to the particular facts of the case under review.

See Rule AP. 8.3. This appellant has failed to do." See also *Williams* v. *State* (1973), 260 Ind. 543, 297 N.E.2d 805.

It may be that the question which Maynard seeks to present is one of first impression in Indiana. In such cases, failure to cite Indiana authority might be excused, although cases from other jurisdictions might be of value. Assuming that such is the case herein, Maynard is still required to bring to our attention the relevant statutes and portions of the Post Conviction rules which he construes as creating his right to be released upon bond.

He has failed to support his argument with any rationale in law or equity. A bald statement of appellant's contention of error in the argument section of the brief will not suffice; his allegation must be supported by appropriate citation of authorities and by cogent argument.

The necessity of such a rule is obvious. It is true that this Court could advance hypotheses as to the statutes or Rules which might have been relied upon by Maynard, the construction which he may have placed thereon, and the reasoning he possibly could have advanced to support his extension of that interpretation. We could then have ruled for or against the arguments thus constructed. However, such a procedure requires us to assume that (1) it is proper for court to assume counsel's responsibilities, and further that (2) this court is already cognizant of all authority and pertinent legal theory and can, *sua sponte,* pick the optimum argument appellant could advance. Such a practice would be preposterous if for no other reason than that it would stultify the growth of our system of justice, confining decision making to strict application of *stare decisis* and would discourage the introduction by counsel of novel legal theories.

Thus, sound policy considerations support our refusal to hazard a guess as to what Maynard's argument might have

been. This is especially true where, as here, our decision would have no practical consequnece to Maynard but would effectively isolate the issue from contention by future appellants. Such future appellants are entitled to have their interests represented by an adversary party with a vital interest at stake, and should not be foreclosed by a proxy argument tentatively advanced by a dispassionate court.

## SENTENCE EXCESSIVE AS A MATTER OF LAW

Although Maynard has not presented the issue for our consideration by his Belated Motion to Correct Error, or by his argument brief, we feel compelled to note that upon his conviction, he was sentenced to the Indiana Reformatory for a term of 1 to 10 years. *Haynes* v. *State* (1973), 155 Ind. App. 472, 293 N.E.2d 204. In this respect, the case before us is identical to *Harrison* v. *State* (1973), 155 Ind. App. 231, 292 N.E.2d 612 wherein we treated a 1 to 10 year sentence upon a conviction of entering a dwelling house with intent to commit a felony. Entry in the case at bar was made to a "place of human habitation" though not technically a dwelling house. Both Harrison and Maynard had been charged with first degree burglary.

Albeit reluctantly for the reasons we enunciated in the *Harrison* opinion, we are obligated to follow *Lee* v. *State* (1972), 259 Ind. 301, 286 N.E.2d 840 and to hold  that Maynard's sentence in this case may not exceed the penalty imposed for second degree burglary.

This cause is remanded to the trial court for a correction of appellant's sentence to an indeterminate term of not less than one nor more than five years, and when so corrected, the judgment is affirmed.

Buchanan, P.J. and White, J., concur.

NOTE.—Reported at 301 N.E.2d 200.