FORREST B. BOWMAN, JR. AND LINDA K. BOWMAN *v.* METROPOLITAN BOARD OF ZONING APPEALS OF MARION COUNTY, DIVISION III, JAMES C. CUMMINGS, THOMAS N. SWIFT, ELTON THOMPSON AND JOHN F. WHITE, AS MEMBERS THEREOF; ARNOLD K. SATZ AND CAROL F. SATZ.

[No. 2-874A211. Filed July 31, 1975. Rehearing denied October 30, 1975.]

*Richard Kammen, Martz, Bowman & Kammen,* of Indianapolis, for appellants.

*David F. Rees,* Deputy Corporation Counsel, City-County Legal Division, of Indianapolis, *Keith Leach, Faust & Joyce,* of Indianapolis, for appellees.

## CASE SUMMARY

BUCHANAN, J.—This is an appeal by Petitioners-Appellants Forrest B. and Linda K. Bowman (Remonstrators) from a

trial court judgment affirming a decision of the Metropolitan Board of Zoning Appeals of Marion County, Division III, (the Board), which granted a variance from Special Use zoning classification to residential use of Indianapolis real estate owned by Respondents-Appellees Arnold K. and Carol F. Satz (Satz). The Remonstrators claim that the Board's decision was not supported by substantial evidence.

We affirm.

## FACTS

The facts and evidence most favorable to the judgment are:

Staz owned three unimproved lots (each measuring 425 feet by 390 feet) on West 83rd Street in Indianapolis, which he had purchased from the Alverna Retreat House, being excess land not on public frontage and not necessary for accessory use by the Retreat House. Satz agreed "not to destroy the ecology and surrounding aesthetic values." The surrounding classified area was predominantly D-1 and D-2 and some A-2.

On September 10, 1973, Satz petitioned the Board for a variance from the existing Special Use classification (the Alverna Retreat House) and to construct three single family residential homes. Satz testified that the homes which he would construct would be compatible to the surrounding area, and in fact would meet a zoning D-1 classification, which requires higher standards than some other property in the area.

Remonstrators testified that drainage and access problems would be created by granting this variance.

To help relieve this drainage problem in the neighborhood, Satz installed drain pipes which were authorized and inspected by two members of the Marion County Flood Control Board to assure proper drainage.

Satz testified further that his effort "has been to protect the aesthetic value and the ecology of the area . . . [and] that he would protect the tranquility of the area." Moreover, Satz declared that because of the nature of the area, the

construction of "three high quality homes" would not be seen nor heard by the Remonstrators.

Various charts, plans and maps relating to the application for a variance were considered by the Board.

The staff of the Division of Planning and Zoning recommended approval of Satz, variance and, following a hearing, the Board granted Satz' variance on October 23, 1973, and made the following Findings of Fact as required by IC 1971, 18-7-2-71, Ind. Ann. Stat. § 53-969.

"1. The grant of the variance will not be injurious to public health, safety, morals, and general welfare of the community because: its use is for single family residences which follows the comprehensive plan for this area;

"2. The use or value of the area adjacent to the property included in the variance will not be affected in a substantially adverse manner because: the entire area is residential and these tracts will conform and/or exceed the standards in the area;

"3. The need for the variance arises from some condition peculiar to the property, and such condition is not due to the general conditions of the neighborhood because: special use zoning does not permit residences;

"4. The strict application of the terms of the ordinance will constitute an unusual and unnecessary hardship if applied to the property for which the variance is sought because: special use zoning does not permit residences;

"5. The grant of the variance does not interfere substantially with the Metropolitan Comprehensive Plan because: the Comprehensive Plan proposes residential use for the area."

### ISSUE

One issue is presented:

Is there substantial evidence to support the Board's granting of the variance?

The Remonstrators assert that there was a total failure of proof to support Findings One, Three and Four of the statutory requirements for the granting of a variance.

Satz argues the reverse.

## DECISION

CONCLUSION—It is our opinion that the trial court did not err in finding that there was substantial evidence of probative value to support the Board's Findings One, Three and Four for the granting of the variance.

This case is reminiscent of *Metropolitan School District of Washington Township* v. *Jansen* (1973), 158 Ind. App. 234, 302 N.E.2d 541, decided by this court in October of 1973, wherein we observed:

> "The effect of appellants' argument is to say that the evidence they submitted in opposition to the petition is more substantial than that evidence in support of the petition. This court, however, may not weigh the evidence submitted to the Board nor substitute its judgment for that of the Board. Our review is limited to whether there is any substantial evidence of probative value which is competent as the foundation for the decision of the Board. Suess v. Vogelgesang (1972), [151] Ind. App. [631], 281 N.E.2d 536; Vogelgesang v. Shackelford (1970), 146 Ind. App. 248, 254 N.E.2d 205, Id. at 235, 302 N.E.2d at 543.

Other cases in recent years have embraced the principle that an appellant appealing the propriety of granting a variance is required to show "that the quantum of legitimate evidence was so proportionately meager as to lead to the conviction that the finding and decision of the Board does not rest upon a rational basis"; or differently stated, that in order to reverse the granting of a variance, the appellant must show that at least one of the five statutory prerequisites was not supported by substantial evidence of probative value. *See, Metro. Dev. Com'n. of Marion Cty.* v. *Camplin* (1972), 153 Ind. App. 622, 288 N.E.2d 569; *Metro. Dev. Com'n. of Marion Cty.* v. *Bicknell* (1972), 151 Ind. App. 554, 280 N.E.2d 861; *Speedway Bd. of Zon. App.* v. *Standard Concrete Materials* (1971), 150 Ind. App. 363, 276 N.E.2d 589; *Metro. Dev. Com'n.* v. *Troy Realty, Inc.* (1971), 150 Ind. App. 213, 275 N.E.2d 845; *Braughton* v. *Metro. Bd. of Zon. App.* (1970), 146 Ind. App. 652, 257 N.E.2d 839; *Vogelgesang* v. *Shackelford* (1970), 146 Ind. App. 248, 254 N.E.2d 205;

*Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 26 N.E. 2d 399.

So we examine Findings One, Three and Four to determine if there was substantial evidence of probative value to sustain each of these findings.

1. Finding One—the grant of the variance will not be injurious to public health, safety, morals, and general welfare of the community.

There was evidence before the Board that the granting of the variance would not have a detrimental effect on the surrounding area.

Satz testified that the homes which he would construct would be compatible to the surrounding area, and in fact would generally meet a zoning D-1 classification . . . a higher standard than some other property in the area. Satz declared that because of the nature of the area, his construction of "three high quality homes" would not be seen nor heard by the Remonstrators. Moreover, there would be no injury to the public health and general welfare of the area as Satz installed drain pipes, which were authorized and inspected by two members of the Marion County Flood Control Board, to assure proper drainage in the neighborhood.

Satz believed that his overall efforts protected "the aesthetic value and the ecology of the area."

Thus there was substantial evidence of probative value that there would be no injury to the public health and safety of the community.

Courts have previously affirmed the granting of variances where the variance requested arguably came closer to a threat to the public health and safety than in the present case. *See, Jansen, supra,* (variance granted for a convenience shopping center from a zoning classification for a school) ; *Troy Realty, Inc., supra,* (variance granted for gasoline service station from a multi-family residential zoning) ; *Braughton, supra,* (variance granted for a gasoline service station from

a residential zoning classification) ; *Bicknell, supra,* (variance granted for gasoline service station from the existing agricultural (A-2) zoning) ; *Camplin, supra,* (variance granted for a convenience shopping center from a low-density residential or agricultural zoning classification).

2. Finding Three—The need for the variance arises from some condition peculiar to the property, and such condition is not due to the general conditions of the neighborhood.

The particular piece of real estate owned by Satz consisted of excess land not on a public frontage and zoned exclusively for Special Use as a religious retreat . . . a condition not common to other land in the neighborhood. Other land in the area was of a residential or agricultural use with high quality homes, so use of this parcel by Satz for use as a religious retreat would be unreasonable in view of the general character of the neighborhood. Under these circumstances this piece of real estate could be considered to be saddled with the condition peculiar to this piece of real estate.

This relatively small piece of real estate was the only one situated in the area which was zoned Special Use for a religious retreat, and this classification as such constituted a condition peculiar to this property. *See, Metro. School District of Washington Township, supra; Metro. Dev. Com'n.* v. *Troy Realty, supra. See also, Vogelgesang* v. *Shackelford, supra.*

3. Finding Four—The strict application of the terms of the ordinance will constitute an unusual and unnecessary hardship if applied to the property for which the variance is sought.

Speaking for the Second District, Judge Sullivan in *Suess* v. *Vogelgesang, supra,* set out the guidelines in determining what is unnecessary hardship :

"Whether unnecessary hardship exists so as to authorize a variance, is a factual question to be determined by the Board in its discretion. Nelson v. Bd. of Zoning Appeals (1959), 240 Ind. 212, 162 N.E.2d 449. No single fact determines the existence of such hardship but

all relevant factors taken together must indicate that the property for which the variance is sought cannot reasonably be put to conforming use. City of E. Chicago, Indiana v. Sinclair Refining Co. (1953), 232 Ind. 295, 111 N.E.2d 459." 281 N.E.2d at 540.

The foregoing recitation of the facts describe "an unusual and unnecessary hardship" if the terms of the zoning ordinance are applied to Satz' property. To deny Satz residential use for a piece of real estate entirely surrounded by property classified residential and to require the use of this excess land as a retreat house could be considered by the Board to constitute an unusual and unnecessary hardship. Or, as Satz put it in his brief:

"The proposition was and is basically self-evident that neither Alverna Retreat House nor Satz could realistically enjoy the property under a strict application of the special use (retreat) zoning."

The special conditions here are such

"that the property affected cannot reasonably be put to a conforming use because of the limitation imposed upon it by reason of the classification in which it is placed by the terms of the ordinance." City of E. Chicago, Indiana v. Sinclair Refining Co. (1953), 232 Ind. 295, 308, 111 N.E.2d 459.

The purchase by Satz of this property with knowledge of the use restriction does not prohibit him from claiming special or unnecessary hardship . . . as was true in Board of Zoning Appeals of City of Hammond, Lake County v. Waskelo (1960), 240 Ind. 594, 168 N.E.2d 72. Waskelo voluntarily reduced the size of the area for which the variance was sought by selling off parcels until it was no longer suitable for the purpose for which the variance was sought. In the hands of Satz or the Alverna Retreat House, this parcel of real estate was saddled with an unnecessary hardship and Satz' purchase thereof, therefore, could not be considered to be a hardship created by his own voluntary act.

Thus, we conclude that there was substantial evidence of probative value to support the Board's Findings One,

Three and Four, and the decision of the trial court is hereby affirmed.

Sullivan, P.J., concurs; White, J., concurs in result only.

NOTE.—Reported at 331 N.E.2d 739.

## ON PETITION FOR REHEARING

BUCHANAN, J.—Bowman's Petition for Rehearing chides us for failing to consider a substantial question raised by appellants in our opinion handed down July 31, 1975 (*Bowman* v. *Metropolitan Board of Zoning Appeals of Marion County* (1975), 165 Ind. App. 212, 331 N.E.2d 739). In our opinion we concluded there was substantial evidence to support the granting of a variance by the Metropolitan Board of Zoning Appeals of Marion County to change the use of the property in question from a special use classification to residential use. Appellants claim our decision failed to consider that a variance was also granted "from the D-1 requirements with respect to public street frontage and lot width requirements . . . although this was the most substantial question raised in the brief of appellants."

While it is dubious if this "substantial question" was separately specified in the Motion to Correct Error as required by Rule TR. 59 (G), the Appellants' brief falls far short of complying with Rule AP. 8.3 (A) (7).

Appellants in their brief make the bald assertion "that there was a total failure of proof on the part of the Petitioners (Satz) with respect to the statutory requirements for the grant of a variance both in the case of the variance from special use to D-1 and in the case of the variance from the D-1 requirements." But no cogent argument emerges at any point to support this contention.

Furthermore, from the record before us it would not be possible to determine if there was substantial evidence to support the granting of a "variance from the D-1 requirements with respect to public street frontage and lot width requirements" because there is no reference or indication in the

record or in Appellants' brief as to the requirements in a D-1 classification as to public street frontage and lot width requirements.

The Metropolitan Comprehensive Plan is an ordinance of which we may not take judicial notice.

*In the Matter of Public Law No. 305 and Public Law No. 309 of the Indiana Acts of 1975,* 263 Ind. 506, 334 N.E.2d 659; *Indianapolis Traction and Terminal Co.* v. *Hensley* (1917), 186 Ind. 479, 115 N.E. 934; *McClurg* v. *Carte, Inc.* (1970), 255 Ind. 110, 262 N.E.2d 854.

Thus, Appellants have waived this issue by failing to make "a clear showing of how the issues and contentions in support thereof relate to the particular facts of the case under review." AP. 8.3 (A) (7). *Loeb* v. *Loeb* (1973), 261 Ind. 193, 301 N.E.2d 349, 358; *Williams* v. *State* (1973), 260 Ind. 543, 297 N.E.2d 805, 807; *Miller* v. *State* (1971), 256 Ind. 296, 268 N.E.2d 299; *Beech* v. *State* (1974), 162 Ind. App. 287, 319 N.E.2d 678, 681-682; *Maynard* v. *State* (1973), 157 Ind. App. 573, 301 N.E.2d 200, 203-204; *Conley* v. *Lothamer* (1971), 150 Ind. App. 356, 276 N.E. 2d 602, 603.

Bowmans' Petition for Rehearing is accordingly denied.

Sullivan, P.J. and White, J., concur.

NOTE.—Reported at 336 N.E.2d 708.