Barbara **BURCHAM**, Christine Balt, and Crooked Creek Community Council, Inc., Appellants–Petitioners,

v.

**METROPOLITAN BOARD OF ZONING APPEALS DIVISION I OF MARION COUNTY, Indiana, Joseph Stanley, Larry Warren, and Celebration Fireworks, Inc., Appellees–Respondents.**

No. 49A05–0610–CV–594.

Court of Appeals of Indiana.

March 31, 2008.

Karen Celestino–Horseman, Indianapolis, IN, Attorney for Crooked Creek Community Council, Inc.

Jon Laramore, Anne K. Ricchiuto, Baker & Daniels, LLP, Indianapolis, IN, Attorneys for Celebration Fireworks.

Ian L. Stewart, Office of Corporation Counsel, Indianapolis, IN, Attorney for Metropolitan Board of Zoning, Appeal Division I.

## OPINION

MAY, Judge.

■ Crooked Creek Community Council, Inc., appeals the trial court's affirmation of a zoning variance [1] granted to Celebration Fireworks. On cross-appeal, Celebration and the Metropolitan Board of Zoning Appeals Division I of Marion County ("BZA") assert we should dismiss this appeal because Crooked Creek does not have standing to challenge a zoning variance. We hold the Appellees waived Crooked Creek's alleged lack of standing, the trial court did not commit reversible error when it declined Crooked Creek's request to submit additional evidence, the BZA had authority to modify its 2002 order, and the record supports the grant of the variance. Accordingly, we affirm.

### FACTS AND PROCEDURAL HISTORY

Celebration began selling fireworks from a retail store at 5860 North Michigan Road in 1988. That area of Michigan Road is zoned C–3, a commercial area where firework sales are prohibited. In April of 2000, Celebration agreed it would

---

1. A variance is a "dispensation granted to permit a property owner to use his property in a manner forbidden by the zoning ordinance." *Schlehuser v. City of Seymour,* 674 N.E.2d 1009, 1012 (Ind.Ct.App.1996).

no longer sell fireworks in areas zoned C–3 "unless said use is specifically permitted by a variance." (App. at 17.) In 2001, Celebration filed a variance petition with the BZA, requesting permission to sell fireworks at 5860 North Michigan Road. The petition was challenged by Crooked Creek, Barbara Burcham, and Christine Balt (collectively, "the Remonstrators"). In April of 2002, the BZA granted Celebration's petition in an order that included findings and conclusions provided by Celebration. The Remonstrators appealed the decision to the Marion County Superior Court, which affirmed the variance.

The Remonstrators appealed the trial court's order. We reversed the trial court's judgment because the BZA's first finding, regarding whether approval of the variance would be "injurious to the public health, safety, morals, and general welfare of the community," was unrelated to the evidence presented at the BZA hearing. *Burcham, Balt and Crooked Creek Community Council, Inc. v. Bd. of Zoning Appeals, Div. 1, Marion County, In., Stanley, and Warren,* No. 49A02–0303–CV–201, mem. op. at 10, 802 N.E.2d 62 (Ind.Ct.App. Dec. 31, 2003) (hereinafter, *"Burcham 1"), reh'g denied, trans. denied.* The BZA found "[t]he proposed use will not cause pollution, traffic congestion, unsanitary conditions or negatively impact drainage," *id.,* while all the evidence submitted dealt with fire safety. We concluded:

> In sum, there is no correlation between the evidence presented at the hearing and the Board's finding. We are, therefore, compelled to hold that the Board's finding under Indiana Code Section 36–7–4–918.4(1) does not rest upon a rational basis in that it is unsupported by the evidence in the record. Accordingly, we conclude that the Board abused its discretion when it granted Celebration Fireworks' petition for a variance of use,

and we reverse the trial court's judgment affirming the Board's decision. *Id.* at 11.

Celebration filed a petition for rehearing in which it requested we remand the case to the BZA for amendment of its first finding of fact, so that it would comport with the evidence submitted. We denied rehearing without clarification. Celebration then filed a petition to transfer, which included a request to remand the case back to the BZA for entry of a proper finding to support the variance. Our Indiana Supreme Court denied transfer.

One week later, on June 25, 2004, Celebration filed with the BZA a special request that it amend the first finding in its 2002 order to comport with the evidence presented regarding fire safety. The BZA's legal counsel responded on July 2, 2004, with a letter that indicated his belief that the decision from the Court of Appeals, without remand for correction of the first finding, was "final and complete. Consequently, the Board of Zoning Appeals lacks jurisdiction to take any further action. . . ." (App. at 231.)

In 2005, the Metropolitan Development Commission of Marion County filed an enforcement action against Celebration to bring Celebration's business at 5860 North Michigan Road into compliance with its C–3 zoning. In that action, Celebration requested a declaratory judgment regarding whether the BZA had jurisdiction to amend its 2002 findings after our decision. The trial court determined:

> [T]he BZA has jurisdiction to consider Celebration's request to amend the Findings of Fact or in the alternative, consider Celebration's new variance petition, both filed with the Board on or about June 25, 2004, as a matter of law following reversal by the Indiana Court of Appeals without remand.

The Court further finds that it is wholly proper for Celebration to bring a new claim with the BZA, and that the Special Request and new variance petition are not barred by Art. VI, § 3(a) of the BZA's Rules of Procedure.

NOW THEREFORE, the Court ORDERS that the BZA conduct proceedings consistent with this Order.

(*Id.* at 248–49.) The Metropolitan Development Commission did not appeal that order. Because the Remonstrators were not parties to that action, they were not able to appeal that finding regarding jurisdiction.

On August 2, 2005, the BZA held a hearing to determine how it would proceed. Celebration and the Remonstrators provided legal arguments and presentations from appellate law experts regarding the effect of this Court's reversal without remand. Thereafter the BZA decided by a vote of 4–1 to modify the first finding of the 2002 order, rather than hear evidence regarding the new variance petition. The BZA entered the following order:

The Metropolitan Board of Zoning Appeals, Division 1 (the "Board"), having considered a *Special Request to Correct and Amend Findings of Fact To Conform to and Reflect Evidence Presented*, which requests the Board to modify its previous findings of fact, adopted on April 9, 2002, to correct an error identified by the Court of Appeals, having reviewed the record of the previous proceedings of the Board (the "Record") and having heard argument with regard to the content of the Record, in particular with regard to fire safety, and concluding that the Board's written findings of fact on April 9, 2002, did not reflect the determination that the Board in fact reached regarding public safety concerns expressed by Remonstrators,

the Board amended its Findings of Fact to read as follows:

1. THE GRANT WILL NOT BE INJURIOUS TO THE PUBLIC HEALTH, SAFETY, MORALS, AND GENERAL WELFARE OF THE COMMUNITY BECAUSE the proposed use, in compliance with Commitments approved by the Board, will not create an unreasonable fire hazard or other threat to public safety.

2. THE USE OR VALUE OF THE AREA ADJACENT TO THE PROPERTY INCLUDED IN THE VARIANCE WILL NOT BE AFFECTED IN A SUBSTANTIALLY ADVERSE MANNER BECAUSE the site has been developed for decades as a strip center for retail sales and this use allows for the center and parking areas to be maintained.

3. THE NEED FOR THE VARIANCE ARISES FROM SOME CONDITION PECULIAR TO THE PROPERTY INVOLVED AND THE CONDITION IS NOT DUE TO THE GENERAL CONDITION OF THE NEIGHBORHOOD BECAUSE due to the existing development and the sale of Class "C" fireworks, relief is warranted.

4. THE STRICT APPLICATION OF THE TERMS OF THE ZONING ORDINANCE CONSTITUTES AN UNUSUAL AND UNNECESSARY HARDSHIP IF APPLIED TO THE PROPERTY FOR WHICH THE VARIANCE IS SOUGHT BECAUSE without relief the site cannot be utilized or maintained.

5. THE GRANT DOES NOT INTERFERE SUBSTANTIALLY WITH THE COMPREHENSIVE PLAN BECAUSE there are no changes.

## DECISION

IT IS THEREFORE the decision of this body that this VARIANCE petition is APPROVED.

(*Id.* at 326.)

The Remonstrators again filed a petition for writ of certiorari with the trial court. The trial court affirmed, finding the BZA had authority to modify its 2002 order and the Record supported the BZA's findings and grant of the variance. The Remonstrators appealed.

On appeal, Burcham and Balt asked to be voluntarily dismissed from the appeal, and we granted their requests. Celebration requested we remand the case to the trial court "for the limited purpose" of deciding whether Crooked Creek had standing to appeal. We denied Celebration's request for reasons we will explain herein. Celebration also requested oral argument, which we deny by separate order today.

## DISCUSSION AND DECISION

1. *Standing*

■ Celebration and the BZA assert we should dismiss this appeal because Crooked Creek, as an association, does not have standing to maintain the appeal following the voluntary dismissal of the two individual Remonstrators. Because this issue was not raised until appeal, it has been waived. *See Family Development, Ltd. v. Steuben County Waste Watchers, Inc.,* 749 N.E.2d 1243, 1254–256 (Ind.Ct. App.2001) ("Because FDL failed to challenge Waste Watchers' standing during the administrative proceedings, it has waived this issue on appeal."), *reh'g denied; State v. Friedel,* 714 N.E.2d 1231, 1236 (Ind.Ct.App.1999) (holding State waived issue of standing by failing to raise it in the trial court).

To support its argument that standing can be raised on appeal when it was not raised before the trial court, Celebration cites *Collard v. Enyeart,* 718 N.E.2d 1156, 1159 (Ind.Ct.App.1999), *trans. denied* 735 N.E.2d 230 (Ind.2000). We decline Celebration's invitation to rely on *Collard* for the reasons explained in *Family Development,* 749 N.E.2d at 1255–56 n. 10:

> In concluding that FDL has waived the issue of standing, we respectfully disapprove of cases holding that this court may address standing *sua sponte* on appeal. *In Matter of City of Fort Wayne,* 178 Ind.App. 228, 381 N.E.2d 1093 (1978), *trans. denied,* a panel of this court stated,
>
> > In a contest of the propriety of annexation the trial court is charged with first passing judgment upon the standing of the parties to maintain the litigation through an examination of the sufficiency of the remonstrance. Thus, the City properly framed the question of whether the court had subject matter jurisdiction over this action in its motion for summary judgment [maintaining that the remonstrance was insufficient due to invalid signatures].
> >
> > Such issue may be raised at any point during litigation and if not raised by the parties it is the duty of the reviewing court to determine the issue *sua sponte. McGraw v. Marion County Plan Commission* (1961), 131 Ind.App. 686, 174 N.E.2d 757. In spite of appellants' contention that jurisdiction was waived per an earlier stipulation, the issue was appropriate for the court's determination, as subject matter jurisdiction cannot be waived or conferred by consent or agreement of the parties. Without a valid remonstrance, regardless of any previous stipulations the court cannot proceed further.

*Id.,* 178 Ind.App. at 230, 381 N.E.2d at 1095–96 (citations omitted). The "[s]uch issue" to which the *City of Fort Wayne* court referred is subject matter jurisdiction. *See McGraw,* 131 Ind.App. at 695, 174 N.E.2d at 761:

Neither party to this appeal has presented to us what we consider to be the crucial question in this case. The power to entertain this particular proceeding depended upon compliance with the statutory conditions precedent to the exercise of that power. Since this matter did not involve a decision of the Plan Commission, there was a failure to comply with the conditions of the statute for review. Thus, the court had no jurisdiction over the subject-matter involved herein. Questions as to such jurisdiction may be raised at any time. If not raised by a party, it is our duty *sua sponte* to determine it.

(Citation omitted.) Nevertheless, a line of cases has misinterpreted "[s]uch issue" as standing and has relied on *City of Fort Wayne* in holding that standing "may be raised at any point during the litigation and if not raised by the parties it is the duty of the reviewing court to determine the issue *sua sponte.*" *See, e.g., In re C. W.,* 723 N.E.2d 956, 962 (Ind.Ct.App.2000), *trans. denied; Collard v. Enyeart,* 718 N.E.2d 1156, 1159 (Ind.Ct.App.1999), *trans. denied* (2000); *Beason–Strange–Claussen v. City of Hammond,* 701 N.E.2d 1288, 1290 (Ind. Ct.App.1998), *trans. denied* (1999); *State Dep't of Pub. Welfare v. Bair,* 463 N.E.2d 1388, 1391 (Ind.Ct.App.1984), *trans. denied.* As the *Wildwood Park [Community Ass'n v. Fort Wayne City Plan Com'n]* court correctly noted, however, a party's "legal capacity . . . to assert its claim" affects the trial court's jurisdiction over the particular case and not jurisdiction over the subject matter.

182 Ind.App. [578] at 583, 396 N.E.2d [678] at 681.

 "Unlike subject matter jurisdiction, which cannot be waived by a party and may be raised, *sua sponte,* by the court, jurisdiction over the particular case may be waived by the failure to make a specific and timely objection." *Id.* (citing, *inter alia, Bd. of Trustees of Town of New Haven v. City of Fort Wayne,* 268 Ind. 415, 422–23, 375 N.E.2d 1112, 1117 (1978)). *Cf. Matter of Lawrance,* 579 N.E.2d 32, 37 (Ind.1991) (discussing public interest exception to mootness doctrine; "While Article III of the United States Constitution limits the jurisdiction of federal courts to actual cases and controversies, the Indiana Constitution does not contain any similar restraint."); *City of Indianapolis v. Indiana State Bd. of Tax Comm'rs,* 261 Ind. 635, 638, 308 N.E.2d 868, 870 (1974):

For the disposition of cases and controversies, the Court requires adverse parties before it. Standing focuses generally upon the question of whether the complaining party is the proper person to invoke the Court's power. However, more fundamentally, standing is a restraint upon this Court's exercise of its jurisdiction in that we cannot proceed where there is no demonstrable injury to the complainant before us. Indeed, absent a 'case or controversy,' we have no jurisdiction to proceed.

Celebration also cites *Save the Valley, Inc. v. Indiana-Kentucky Electric Corp.,* 820 N.E.2d 677 (Ind.Ct.App.2005), *aff'd on reh'g* 820 N.E.2d 677 (Ind.Ct.App.2005), *trans. denied* 824 N.E.2d 776 (Ind.2005), to support its argument that it can question Crooked Creek's standing on appeal because Crooked Creek is an association and associations do not generally have standing in zoning cases. However, Celebration does not acknowledge footnote 3, which provides:

The Appellants argue that IDEM waived any challenges to their alleged lack of standing because IDEM did not raise an objection to the Appellants' standing before the OEA. However, to the extent this issue is relevant, we conclude that IDEM may proceed with a challenge to the Appellants' standing. We have observed that a party who raises a new issue for the first time on appeal does not necessarily waive that claim if the opposing party had unequivocal notice of the existence of the issue and an opportunity to defend against it. *McGill v. Ling,* 801 N.E.2d 678, 687–88 (Ind.Ct.App.2004), *trans. denied.* Because IKED raised a similar standing challenge before the OEA, the Appellants had notice of the issue and the opportunity to defend against it at the trial court level.

*Id.* at 679 n. 3. That footnote indicates IDEM was permitted to challenge Save the Valley's standing on appeal only because a third party, IKED, had raised standing below, such that Save the Valley had the opportunity to litigate the issue.

Crooked Creek, in contrast, was not given an opportunity to litigate the standing issue in the trial court.[2] Accordingly, we hold this issue waived for appeal.

### 2. *Admission of Evidence*

■ Crooked Creek argues the trial court abused its discretion because it did not admit a copy of the Michigan Road Corridor Plan into evidence before it ruled on the validity of the variance granted to Celebration. Ind.Code § 36–7–4–1009 provides the court "may take evidence to supplement the evidence and facts disclosed by the return to the writ of certiorari," if "the court determines that testimony is necessary for the proper disposition of the matter." Accordingly, the trial court is permitted, but not required, to receive additional evidence, and we review its decision for an abuse of that discretion. *See, e.g., City of Indianapolis v. Woods,* 703 N.E.2d 1087, 1091 (Ind.Ct.App.1998) (discussing trial court's admission of evidence during review of police merit board decision), *trans. denied* 714 N.E.2d 174 (Ind. 1999).

The trial court found the information was "irrelevant to consideration of the variance at issue." (App. at 425.) Crooked Creek asserts the court erred in so finding because the BZA testimony included statements regarding that Corridor Plan and because the Corridor Plan was part of the Comprehensive Plan for the land at issue. Although the Corridor Plan may not have been "irrelevant," we must consider the trial court's decision in the context of the review it was conducting.

■ The function of the trial court when reviewing the BZA's decision is simply "to determine if the evidence before the Commission taken as a whole provides a reasonable evidentiary basis for its decision." *Van Vactor Farms, Inc. v. Marshall County Plan Comm'n,* 793 N.E.2d 1136, 1148 (Ind.Ct.App.2003), *trans. denied.* To reverse the grant of a variance, "an appellant must show that the quantum of legitimate evidence was so proportionately meager as to lead to the conviction that the finding and decision of the board

---

**2.** If Celebration had challenged Crooked Creek's standing, Crooked Creek would have been put on notice that it ought not consent to the voluntary dismissal of the two named individual Appellants, who undoubtedly have standing. This could be true even if the trial court did not address such motion due to its disposition of the case on the merits in favor of Celebration. Because Crooked Creek was not put on notice that Celebration might raise this standing issue, we find it especially just to prohibit Celebration from taking advantage of its failure to raise the standing issue prior to appeal.

does not rest upon a rational basis." *Snyder v. Kosciusko County Bd. of Zoning Appeals*, 774 N.E.2d 550, 552 (Ind.Ct.App. 2002).

Crooked Creek has not explained why the admission of the Michigan Road Corridor Plan would have caused the trial court to find the BZA's decision did not rest on a "rational basis" or why that Plan would have led the trial court to believe the remaining evidence before the BZA did not provide "a reasonable evidentiary basis for" the grant of the variance. Accordingly, even if the court erroneously stated the Plan was "irrelevant," Crooked Creek has not demonstrated the prejudice required for us to find the error requires reversal.

### 3. BZA's Actions

■■■■ When we review the BZA's action, we apply the same standard as the trial court. *Schlehuser v. City of Seymour*, 674 N.E.2d 1009, 1013 (Ind.Ct.App. 1996). We may not reverse the BZA's decision "unless an error of law is demonstrated." *Id.* Neither may we substitute our judgment for that of the BZA unless the appellant demonstrates illegality in the BZA's action. *Id.*

■■■■ We may not try the facts *de novo* or substitute our judgment for that of the zoning board. *Hoosier Outdoor Advertising Corp. v. RBL Management, Inc.*, 844 N.E.2d 157, 163 (Ind.Ct.App.2006), *trans. denied.* Neither may we "reweigh the evidence or reassess the credibility of the witnesses." *Id.* Rather, we must accept the facts as found by the zoning board. However, we conduct a *de novo* review of any questions of law decided by the agency. *Id.*

### a. Authority to Modify 2002 Order

■■■ Crooked Creek alleges the trial court misinterpreted the effect of our prior judgment on appeal. When this case was appealed the first time, we concluded:

> In sum, there is no correlation between the evidence presented at the hearing and the Board's finding. We are, therefore, compelled to hold that the Board's finding under Indiana Code Section 36–7–4–918.4(1) does not rest upon a rational basis in that it is unsupported by the evidence in the record. Accordingly, we conclude that the Board abused its discretion when it granted Celebration Fireworks' petition for a variance of use, and we reverse the trial court's judgment affirming the Board's decision.

*Burcham 1,* 802 N.E.2d 62, slip op. at 11.

When reviewing the BZA's modification of the 2002 findings, the trial court concluded:

> 6. As the BZA and the Marion Superior Court, Civil Division No. 12, already have ruled, the BZA had authority to amend its finding in the 2002 variance for Celebration.
>
> 7. The effect of the Court of Appeals' decision was to vacate the trial court's decision, but to leave the BZA's variance in place. When an appellate court reverses a trial court's judgment, the parties are returned to the position they were in before the trial court's judgment. *Reese v. Reese,* 696 N.E.2d 460, 463 (Ind.Ct.App.1998); *Greater Clark County Sch. Corp. v. Myers,* 493 N.E.2d 1267, 1270 (Ind.Ct.App.1986); *Brown v. State,* 458 N.E.2d 245, 250 (Ind.Ct.App. 1983).
>
> 8. The Court of Appeals' decision reversed and thus vacated the trial court's judgment.
>
> 9. Before the Court of Appeals' decision, the parties were in the trial court disputing the legality of the variance. The Court of Appeals' decision thus had no effect on the variance itself, but

placed the parties in their original position, contesting the variance.

10. The Court of Appeals has statutory authority only to act upon the trial court's judgment, not upon the variance itself. Ind.Code § 36–7–4–1011.

11. Indiana law also holds that when a BZA has failed to make adequate findings to support a decision, the proper remedy for that error is remand to the BZA for entry of appropriate findings. "The proper remedy in the absence of adequate factual findings is remand to the board to enter findings of fact in support of its conclusion." *Gary Bd. of Zoning Appeals v. Eldridge,* 774 N.E.2d 579, 583 (Ind.Ct.App.2002) (citing *Brownsburg Conservation Club, Inc. v. Hendricks County Bd. of Zoning Appeals,* 697 N.E.2d 975, 978 (Ind.Ct.App. 1998)).

12. For the Court of Appeals to give the relief it gave, it had to conclude that there was sufficient evidence to support the variance—if there were not sufficient evidence, the remedy would be reversal and remand with instructions to enter judgment against Celebration. This Court agrees that the record of the original BZA hearing contains substantial evidence that fireworks sale at the site presented no safety problem.

13. BZA's [sic] have inherent authority to correct errors in their orders. *Miller v. St. Joseph Cty. Area Bd. of Zoning Appeals,* 809 N.E.2d 356, 359 n. 1 (Ind.Ct.App.2004).

14. Because the Court of Appeals' decision left the variance intact and because the appropriate remedy for insufficient findings in a zoning case is remand for correction of the findings, the BZA acted appropriately in amending its Finding No. 1.

15. *Res judicata* is not a bar in this case because there was no relitigation at all, only an amendment of the BZA's finding to correct a technical error.

16. *Res judicata* also is not a bar because there was no final judgment between the parties. The Court of Appeals reversed the previous judgment of the trial court, but no new judgment was entered.

(App. at 431–33.)

██ We agree with Crooked Creek that the trial court erroneously concluded the BZA had authority to modify the 2002 findings because those findings had been "inadequate." Findings are inadequate when they "are insufficient to permit intelligent appellate review." *See Stytle v. Angola Die Casting Co.,* 783 N.E.2d 316, 322 (Ind.Ct.App.2003) (holding findings by worker's compensation board were inadequate to permit review). In *Burcham 1* we had no trouble reviewing the BZA's findings. *See Burcham 1,* 802 N.E.2d 62, slip op. at 9 ("Because the Board did state the factual basis for its conclusion that Celebration Fireworks had met its burden under subsection (1) of the variance statute, the finding does allow for intelligent judicial review.") (emphasis in original). Rather, we concluded the first finding did "not rest upon a rational basis" because it was "unsupported by the evidence in the record." *Id.* at 11. Our reversal on the merits of the BZA's findings is not synonymous with a reversal for inadequate findings. *Cf. Stytle,* 783 N.E.2d at 322 (remanding with instructions for the BZA to enter sufficient findings).

██ Neither do we agree with the trial court's conclusion that our reversal of the trial court's judgment left the BZA's variance "intact." (App. at 433.) In *Burcham 1,* we held "the Board abused its discretion when it granted Celebration Fireworks' petition for a variance of use." *Burcham 1,* 802 N.E.2d 62, slip op. at 11. This

abuse of discretion occurred because there was "no correlation between the evidence presented at the hearing and the Board's finding." *Id.* The trial court concluded our reversal of its prior judgment "placed the parties in their original position, contesting the variance" in the trial court. (App. at 432.)[3] Be that as it may, after *Burcham 1* there remained nothing to contest in the trial court.

■ While trial courts have authority to "modify" a BZA's decision after considering its "legality," Ind.Code § 36–7–4–1009, trial courts may not conduct a "trial de novo," *id.*, or enter new findings of fact for the BZA. *See St. Charles Tower, Inc. v. Bd. of Zoning Appeals of Evansville-Vanderburgh County,* 873 N.E.2d 598, 600 (Ind.2007) ("A proceeding before a trial court ... is not a trial *de novo;*" the court may not "substitute its own judgment for or reweigh the evidentiary findings of an administrative agency."). *Burcham 1* is the law of this case and "is conclusive as to all matters within its scope." *Greater Clark County Sch. Corp. v. Myers,* 493 N.E.2d 1267, 1269 (Ind.Ct.App.1986), *reh'g denied, trans. denied.* The language we used when reversing in *Burcham 1* left the trial court without authority to take any action except to order the BZA to reverse the grant of Celebration's variance. Therefore, our reversal was for all practical purposes a reversal of the BZA's grant of the variance. In light of the already over-burdened schedules of our trial courts, we decline to hold the trial court was required to enter an order to effectuate our reversal of the BZA's grant of variance. For all the same reasons, *Burc-*

ham 1 was, in fact, a final judgment between these parties as to the validity of the 2002 variance.

■ The question remains, however, whether a BZA nevertheless has authority to retroactively modify an order after we inform the BZA that one of its findings was not related to the evidence presented at the hearing and appeared to have been erroneously "cut and pasted" from another BZA decision. *Burcham 1,* 802 N.E.2d 62, slip op. at 10 n. 2.

The function of a board of zoning appeals is quasi-judicial. Thus, it generally has no inherent power to review and vacate, rescind or alter its decision after it has been made. The powers of the BZA are strictly limited to those granted by its authorizing statute. Any acts of the BZA that exceed the powers enumerated by the Indiana Code and the local zoning ordinance are *ultra vires* and void.

*Schlehuser,* 674 N.E.2d at 1014.

Regarding the correction of clerical errors in a BZA's order, we have held:

We agree that a zoning board must be able to make corrections to clerical errors in its orders. While we have found no statute which directly authorizes zoning boards to amend orders to correct clerical errors, we note that our courts have applied general administrative law principles outside the context of an agency action governed by the Administrative Orders and Procedures Act ("AOPA"). *See City of Jasper v. Collignon,* 789 N.E.2d 80, 87 (Ind.Ct.App.

---

3. As we have explained:
 When an appellate court reverses a trial court's decision, that reversal vacates and nullifies the trial court's decision. The parties are then restored to the position they held before the judgment was pronounced and must take their places in the trial court

at the point where the error occurred, and proceed to a decision.
*Grand Trunk Western R. Co. v. Kapitan,* 698 N.E.2d 363, 366 (Ind.Ct.App.1998). We do not disagree with this statement of the law. Rather, we disagree with the trial court's application of that law to the facts of this case.

2003), *trans. denied.* Most directly on point, in *Equicor Dev., Inc. v. Westfield–Washington Township Plan Comm'n,* 758 N.E.2d 34 (Ind.2001), our Supreme Court applied the provisions of the AOPA in reviewing a decision made by a local zoning commission. Ind.Code § 4–21.5–3–31 (Burns Code Ed. Repl.1996), authorizes an agency to correct clerical mistakes or other errors resulting from oversight or omission in a final order. Thus, to the extent that the Board was correcting mistakes in its first final order, it had authority to do so.

*Miller v. St. Joseph County Area Bd. of Zoning Appeals,* 809 N.E.2d 356, 359 n. 1 (Ind.Ct.App.2004). Accordingly, the BZA had authority to correct what it believed to be a clerical error in its own 2002 order. Ind.Code § 4–21.5–3–31(d) ("Clerical mistakes and other errors resulting from oversight or omission in a final order ... may be corrected by an ultimate authority or its designee on the motion of any party or on the motion of the ultimate authority or its designee.").

### b. *Validity of Variance*

 "A zoning board has the power within its discretion to approve or deny a variance from the terms of a zoning ordinance." *Schlehuser,* 674 N.E.2d at 1013. To obtain a variance, a petitioner must demonstrate:

(1) the approval will not be injurious to the public health, safety, morals, and general welfare of the community;

(2) the use and value of the area adjacent to the property included in the variance will not be affected in a substantially adverse manner;

(3) the need for the variance arises from some condition peculiar to the property involved;

(4) the strict application of the terms of the zoning ordinance will constitute an unnecessary hardship if applied to the property for which the variance is sought; and

(5) the approval does not interfere substantially with the comprehensive plan adopted under the 500 series of this chapter.

Ind.Code § 36–7–4–918.4.

 "We presume the determination of the board ... is correct," *Snyder,* 774 N.E.2d at 552, and "afford great weight to the decision of the board ... by virtue of its experience in this given area." *City of Hobart Common Council v. Behavioral Institute of Ind., LLC,* 785 N.E.2d 238, 255 (Ind.Ct.App.2003). We resolve all doubts about facts in favor of the BZA's decision, without reweighing the evidence or reassessing the credibility of the witnesses. *Id.* at 254–55. If the evidence is sufficient to uphold the BZA's decision, we must do so. *Id.* at 255. With this standard in mind, we review the Board's findings under each of the statutory elements.

The BZA found the variance would not be injurious to the public health, safety, morals, and general welfare of the community because "the proposed use, in compliance with Commitments approved by the Board, will not create an unreasonable fire hazard or other threat to public safety." (App. at 326.) Crooked Creek does not argue the evidence is insufficient to support this finding by the BZA.

Regarding the second element, the BZA found the use or value of the adjacent property would not be affected in a substantially adverse manner because "the site has been developed for decades as a strip center for retail sales and this use allows for the center and parking areas to be maintained." (*Id.* at 326.) The finding rests on the evidence that Celebration has been operating a fireworks store for approximately twenty years at this location

in the "commercial corridor of North Michigan." (*Id.* at 142.) Presumably, then, the grant of a variance to continue that use is unlikely to have an adverse impact on the surrounding properties. (*See* Tr. at 181) ("[T]he petitioners indicate that the use had been in existence since 1988. . . . Certainly, if there was going to be an adverse impact on the sales and value of adjacent property, it would have occurred within these last 14 years."). Accordingly, the evidence supports the BZA's finding.[4]

With regard to the third element, the BZA found the need for the variance arises from some condition peculiar to the property involved and the condition is not due to the general condition of the neighborhood because "due to the existing development and the sale of Class 'C' fireworks, relief is warranted." (App. at 326.) Again, the evidence indicated that this family-owned retail business, which included some sales of fireworks, had existed at this site for nearly twenty years. This supports the BZA finding there was a condition peculiar to the property.

Regarding the fourth element, the BZA found the strict application of the terms of the zoning ordinance constitutes an unusual and unnecessary hardship if applied to the property for which the variance is sought because "without relief the site cannot be utilized or maintained." (*Id.* at 326.) Because of the location's zoning status, Celebration will be unable to utilize the current location for the sale of fireworks unless the variance is granted. Requiring Celebration to move its business from the location where it has been for twenty years could reasonably be viewed

as an "unnecessary hardship," especially when Celebration agreed to a number of commitments indicated to eliminate any fire safety concerns for the surrounding neighbors, when the retail nature of Celebration's business is in accord with the surrounding retail uses, and when numerous neighbors signed letters of support for the variance to keep Celebration in their neighborhood. The testimony in the record also suggests Celebration has longstanding customers who visit this site to buy fireworks and who would be inconvenienced if Celebration were required to stop selling fireworks.

Finally, with regard to the final element, the BZA found the grant does not interfere substantially with the comprehensive plan because "there are no changes." (*Id.* at 326.) Testimony at the hearing indicated that because of the commitments agreed to by Celebration, there would be no storage of fireworks at the site and no outdoor storage or displays of fireworks. Therefore, Celebration's retail business at this site would be similar to the other retail businesses that surround it. This evidence supports the BZA finding the variance would cause "no changes" to the comprehensive plan.

Because the evidence in the record supports all five of the statutory findings, we affirm the BZA's grant of the variance to Celebration.

Affirmed.

SHARPNACK, J., and BAILEY, J., concur.

---

4. Crooked Creek seems to suggest the "adverse impact" of granting the variance is that the value of surrounding properties will not increase as neighborhood redevelopment occurs. While Celebration had a burden to demonstrate no immediate adverse impact from the grant of the variance, we do not read the statute to require Celebration to demonstrate what might happen to property values if unspecified future redevelopment occurs.