**SAM'S EAST, INC., Appellant–Respondent,**

**City of Greenwood Board of Zoning Appeals, Respondent,**

v.

**UNITED ENERGY CORPORATION, INC., d/b/a Greenwood Sunoco, Appellee–Petitioner.**

No. 41A04–0909–CV–545.

Court of Appeals of Indiana.

June 11, 2010.

---

Stephen L. Huddleston, Huddleston & Huddleston, Franklin, IN, Attorney for Appellant.

Tony H. Abbott, Abbott & Harris, Fishers, IN, Attorney for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Sam's East, Inc., ("Sam's") appeals the trial court's reversal of the decision of the City of Greenwood Board of Zoning Appeals ("BZA") to issue a variance to Sam's. We affirm.

### Issue

Sam's raises three issues. We address a dispositive issue, which we state as whether the trial court properly concluded that the need for the variance did not arise from some condition peculiar to the property.

### Facts

In 2002, Sam's sought to rezone a portion of the parking lot for the Greenwood Sam's Club so that it could be used for a gas station and car wash for Sam's Club members.[1] The City of Greenwood Plan Commission ("Plan Commission") encouraged Sam's to abandon the rezoning request and relocate its plans to a parcel of property adjacent to the Sam's Club parking lot that was already zoned C–2, which was suitable for a gas station. Accordingly, Sam's withdrew its rezoning request and, in 2005, Sam's purchased the adjacent property. The property is located in the I–65 Corridor Overlay Zone District ("Overlay Zone"). The Overlay Zone was created because:

> The visibility and accessibility of the land within this corridor is unique, and the land is in relatively large ownership tracts, and therefore commands the highest standards of development which stimulate capital investments, encourage efficient land use, promote coordinated development, permit innovative site de-

signs, establish development standards and preserve the integrity of the roadways within this corridor.

Appellee's App. pp. 29–30.

In February 2005, Sam's filed its commercial site plan with the Plan Commission, which it approved in April 2005. That same month, Sam's requested a reduction of the setback from ninety feet to sixty feet, and the request was approved. The Plan Commission then issued a land alteration permit, allowing the construction of a gas station. In October 2005, the Greenwood Board of Public Works & Safety approved Sam's performance letters of credit and accepted the inspection and testing agreement for various improvements associated with development of the property.

In January 2006, the Plan Commission notified Sam's twice that it was required to retrieve the land alteration permit prior to construction, but Sam's never did. Sam's explained that it did not retrieve the permit because it had encountered an environmental issue that delayed building plans. In 2006, Sam's sought to replat the property, dividing it into two lots. The Plan Commission approved the replat.

Because Sam's did not retrieve the permit within two years of the April 25, 2005 approval, the permit expired on April 27, 2007, and Sam's did not construct the gas station. On August 27, 2007, United Energy Corporation, Inc., d/b/a Greenwood Sunoco ("Sunoco") purchased the property adjacent to Sam's property and constructed a gas station.

On January 21, 2008, the Greenwood Common Council adopted an ordinance that added gas stations to the list of forty-eight excluded uses in C–1, C–2, and C–3

---

1. For simplicity, we reference the car wash and the gas station collectively as the gas station.

districts inside the Overlay Zone. On July 10, 2008, Sam's filed an application for a use variance with the BZA to build its gas station. On August 25, 2008, the BZA held a hearing, at which Sunoco remonstrated. Sam's argued that because its gas station was unique, it was not the type of gas station that the Greenwood Common Council intended to exclude from the Overlay Zone. The BZA approved the application for variance, finding in relevant part:

> 9. The need for the variance arises from some condition peculiar to the property involved, because the property was purchased, was subject of a commercial site development plan petition, and was permitted for a gasoline service station, prior to the enactment of regulations prohibiting that use.

Appellant's App. p. 91.

On September 24, 2008, Sunoco filed its petition for writ of certiorari and sought a restraining order. On August 28, 2009, the trial court reversed the BZA's decision to issue the variance to Sam's. Sam's now appeals.

### Analysis

■ In reviewing the BZA's action, we apply the same standard as the trial court. *See Burcham v. Metropolitan Bd. of Zoning Appeals Div. I of Marion County*, 883 N.E.2d 204, 213 (Ind.Ct.App.2008). We do not reweigh the evidence or reassess the credibility of the witnesses. *Id.* We accept the facts as found by the zoning board and conduct a de novo review of any questions of law decided by the agency. *Id.*

■ A variance is a dispensation granted to permit a property owner to use his or her property in a manner forbidden by the zoning ordinance. *Id.* at 207 n. 1. "Most of the decisions concerning variances, and consequently the language employed by the courts, deal with whether the property can reasonably be used in conformity with the requirements of the zone in which it is situated." *Miller v. Board of Zoning Appeals of City of Rochester, Fulton County*, 397 N.E.2d 1091, 1092 (Ind.Ct.App.1979). "There is a presumption that determinations of a zoning board, as an administrative agency with expertise in the area of zoning problems, are correct and should not be overturned unless they are arbitrary, capricious, or an abuse of discretion." *Van Scoik v. Kosciusko County Bd. of Zoning Appeals*, 598 N.E.2d 594, 595–96 (Ind.Ct.App.1992), *trans. denied.*

■ Indiana Code Section 36–7–4–918.4 provides:

> A board of zoning appeals shall approve or deny variances of use from the terms of the zoning ordinance. The board may impose reasonable conditions as a part of its approval. A variance may be approved under this section only upon a determination in writing that:
>
> (1) the approval will not be injurious to the public health, safety, morals, and general welfare of the community;
>
> (2) the use and value of the area adjacent to the property included in the variance will not be affected in a substantially adverse manner;
>
> (3) the need for the variance arises from some condition peculiar to the property involved;
>
> (4) the strict application of the terms of the zoning ordinance will constitute an unnecessary hardship if applied to the property for which the variance is sought; and
>
> (5) the approval does not interfere substantially with the comprehensive plan adopted under the 500 series of this chapter.

Because a petitioner for a variance must establish the existence of all of the prerequisites, the failure of proof on any one will be sufficient to defeat the request. *Maxey v. Bd. of Zoning Appeals*, 480 N.E.2d 589, 595 (Ind.Ct.App.1985), *trans. denied.*

Our analysis focuses on the requirement that the need for the variance arises from some condition peculiar to the property involved. *See* Ind.Code § 36–7–4–918.4(3). In support of the condition peculiar requirement, Sam's points out that its gas station must be located in a close proximity to the Sam's Club because they would share customers of the private club, they would have similar hours of operation, and the gas station would use the Sam's Club dumpster and entryway off of Emerson Avenue. Sam's also points out that the variance was conditioned on the removal of the gas station if the Sam's Club ceases operation. Further, Sam's directs us to the fact that site does not have direct access from Emerson Avenue and is lower than Emerson Avenue. Sam's "vehemently disagrees that the BZA was only to consider the physical characteristics of the Site and ignore the historical zoning proceedings that [it] pursued." Appellant's Br. p. 25.

Sam's argues that *Burcham* "illustrates the quantity and nature of evidence that is sufficient to meet a variance petitioner's burden of showing a condition peculiar to the property involved." *Id.* at 27. Sam's also asserts that the *Burcham* court considered Celebration Firework's twenty-year history of selling fireworks on the property in determining that a condition peculiar to the property existed.

The extent of the *Burcham* court's discussion of condition peculiar requirement is as follows:

> With regard to the third element, the BZA found the need for the variance arises from some condition peculiar to

the property involved and the condition is not due to the general condition of the neighborhood because "due to the existing development and the sale of Class 'C' fireworks, relief is warranted." (App. at 326.) Again, the evidence indicated that this family-owned retail business, which included some sales of fireworks, had existed at this site for nearly twenty years. This supports the BZA finding there was a condition peculiar to the property.

*Burcham*, 883 N.E.2d at 217. Contrary to Sam's argument, *Burcham* does not contain an in depth analysis of the condition peculiar requirement. Moreover, even if the long-term use of the property is relevant to the condition peculiar requirement, Sam's does not have a long-term use of the property as a gas station. Even though Sam's had begun the process of constructing a gas station near the Sam's Club in 2002, the project languished, and Sam's let its land alteration permit expire in 2007. The facts before us are distinguishable from those in *Burcham*.

■ Although our research does not show a clear-cut definition of the condition peculiar requirement, we believe that the peculiarity must at least relate to the specific features of the property, not just the owner's desired use of the property. *See, e.g., Bowman v. Metro. Bd. of Zoning Appeals of Marion County*, 165 Ind.App. 212, 218, 331 N.E.2d 739, 742 (1975) (considering a relatively small piece of real estate without public frontage and zoned for special use as a religious retreat to be "saddled" with a condition peculiar to the property where other land in the area was of a residential or agricultural use with high quality homes); *Metro. Sch. Dist. of Washington Twp., Marion County v. Jansen*, 158 Ind.App. 234, 236–37, 302 N.E.2d 541, 543 (1973) (concluding the Board was justified in finding the need for the variance

arose from some condition peculiar to the property where there was evidence that the unusual shape and relatively small acreage, when viewed in conjunction with the adjoining commercial use and railroad track, made the property unsuitable for development as either an apartment complex or an agricultural use); *Metro. Dev. Comm'n of Marion County v. Troy Realty, Inc.,* 150 Ind.App. 213, 218, 275 N.E.2d 845, 848 (1971) (affirming issuance of variance where evidence indicated the property was situated at one corner of a heavily trafficked intersection making it more affected by noise and fumes than the surrounding area and the area was lower and more adversely affected by water drainage than the surrounding neighborhood); *Vogelgesang v. Shackelford,* 146 Ind.App. 248, 263–64, 254 N.E.2d 205, 214 (1970) (affirming variance where the location of the parcel was located on a major thoroughfare and adjacent to a gas station and riding stable, making the site unsuitable for the single-family residential use for which it was zoned).

Here, the BZA found that the need for the variance arose because the property was purchased and permitted for a gas station before the ordinance was amended. This finding, however, does not relate to the uniqueness of the property but, instead relates to the uniqueness of Sam's history with the property. Because this finding is not indicative of some condition peculiar to the property that limits the property from being developed in a manner consistent with the Overlay Zone, it is more appropri-

ately considered under the unnecessary hardship requirement of Indiana Code Section 36–7–4–918.4(4).[2] To hold otherwise would be to overlook the statutory requirement that the variance be related "to some condition peculiar to the property." I.C. § 36–7–4–918.4.

It is clear the BZA had broad discretion to make factual determinations; however, the BZA did not have discretion to incorrectly interpret or define the condition peculiar requirement. Although the BZA's finding that the property was purchased and permitted for a gas station prior to the amendment of the Overlay Zone is supported by the record, that finding does not support the conclusion that the variance could and/or should be granted based on the condition peculiar requirement.

### Conclusion

The trial court properly reversed the issuance of the variance because the BZA's findings do not support the conclusion that the need for the variance arises from a condition peculiar to the property. We affirm.

Affirmed.

BAILEY, J., and MAY, J., concur.

---

**2.** The overlap between the condition peculiar requirement and the unnecessary hardship requirement is evidenced by Sam's own application for the use variance. Sam's included detailed reasons why it considered the need

for the variance to be a condition peculiar to the property and referenced the same reasons as support for unnecessary hardship requirement.