## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 06 2020, 9:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

C. Gregory Fifer
Applegate Fifer Pulliam LLC
Jeffersonville, Indiana

ATTORNEY FOR APPELLEE FLOYD
COUNTY BOARD OF ZONING
APPEALS

Keith D. Mull
Mull Law Office
New Albany, Indiana

ATTORNEY FOR APPELLEES
CURT RAFFERTY AND CEEK
PROPERTIES, LLC

John A. Kraft
Young, Lind, Endres & Kraft
New Albany, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Stiller Properties, LLC, <br><br> *Appellant-Petitioner,* <br><br> v. <br><br> Floyd County Board of Zoning Appeals, Curt Rafferty, and Ceek Properties, LLC, <br><br> *Appellees-Respondents* | March 6, 2020 <br><br> Court of Appeals Case No. 19A-PL-2190 <br><br> Appeal from the Floyd Superior Court <br><br> The Honorable Marsha Owens Howser, Special Judge <br><br> Trial Court Cause No. 22D02-1809-PL-1305 |

**Crone, Judge.**

## Case Summary

[1]     Curt Rafferty filed an application for a development standards variance to build a 7500-square-foot Dollar General store in a zoning district in which retail establishments only up to 5000 square feet are permitted. The Floyd County Board of Zoning Appeals ("BZA") held a hearing and granted Rafferty's variance application over the objection of neighboring landowner Stiller Properties, LLC ("Stiller"). Stiller petitioned for judicial review of the BZA's decision, which the trial court affirmed. On appeal, Stiller contends that the BZA's decision is unsupported by substantial evidence. We disagree and therefore affirm.

## Facts and Procedural History

[2]     Ceek Properties, LLC ("Ceek"), owns a lot on Paoli Pike in Floyds Knobs that is located in a Neighborhood Commercial ("NC") zoning district. One of the permitted uses in an NC district is a Retail Small Scale use, which "means a retail establishment up to 5,000 square feet primarily engaged in the selling or rental of goods and/or merchandise and in rendering services incidental to the sale of such goods." Appellant's App. Vol. 2 at 185. Rafferty contracted with Ceek to purchase the lot with the intent of building a Dollar General store that he would lease to the company. In July 2018, Rafferty filed an application for a development standards variance that would allow him to build a 7500-square-foot store. At the BZA hearing on his application, Rafferty explained that

"Dollar General does not have a prototype that's 5,000 square feet. Their smallest prototype is 7,500. If there was one that was 5,000 I would be happy to do it, but their smallest one is 7,500 and they rarely ever use it." *Id*. at 135. The BZA granted the application over the objection of Stiller, which owns property across Paoli Pike from Ceek's lot. Stiller petitioned for judicial review of the BZA's decision, which the trial court affirmed. Stiller now appeals.

## Discussion and Decision

[3] Stiller contends that the BZA erred in granting Rafferty's variance application. "A variance is described as a dispensation granted to permit a property owner to use his property in a manner forbidden by the zoning ordinance. A zoning board has the power within its discretion to approve or deny a variance from the terms of a zoning ordinance." *Schlehuser v. City of Seymour*, 674 N.E.2d 1009, 1012 (Ind. Ct. App. 1996) (citation omitted). Judicial relief from a zoning decision may be granted only if the court determines that the petitioner has been prejudiced by a decision that is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence." Ind. Code § 36-7-4-1614(d). "The burden of demonstrating the invalidity of a zoning decision is on the party to the judicial review proceeding asserting invalidity." Ind. Code § 36-7-4-1614(a).

[4]     When we review a zoning board's decision, we apply the same standard as the trial court. *Burcham v. Metro. Bd. of Zoning App. Div. 1 of Marion Cty.*, 883 N.E.2d 204, 213 (Ind. Ct. App. 2008). We may not substitute our judgment for that of the zoning board, and we may neither reweigh evidence nor reassess witness credibility. *Id*. To reverse the grant of a variance on the basis of insufficient evidence, "an appellant must show that the quantum of legitimate evidence was so proportionately meager as to lead to the conviction that the finding and decision of the board does not rest upon a rational basis." *Id*. at 212-13 (quoting *Snyder v. Kosciusko Cty. Bd. of Zoning App.*, 774 N.E.2d 550, 552 (Ind. Ct. App. 2002), *trans. denied* (2003)).

[5]     The requirements for obtaining a development standards variance are spelled out in Indiana Code Section 36-7-4-918.5(a), which reads in relevant part,

> A board of zoning appeals shall approve or deny variances from the development standards (such as height, bulk, or area) of the zoning ordinance.[1] The board may impose reasonable conditions as a part of the board's approval. A variance may be approved under this section only upon a determination in writing that:
>
>> (1) the approval will not be injurious to the public health, safety, morals, and general welfare of the community;

---

[1] Stiller argues that Rafferty should have applied for a use variance instead of a development standards variance because the zoning ordinance does not permit commercial retail uses of 5000 square feet or more in an NC district. The appellees assert that this argument is waived because Stiller failed to raise it at the BZA hearing. We agree. *See McBride v. Bd. of Zoning App. of Evansville-Vanderburgh Area Plan Comm'n*, 579 N.E.2d 1312, 1315 (Ind. Ct. App. 1991) ("Objections or questions which have not been raised in the proceedings before the administrative agency will not be considered by this court on review of the agency's order.").

> (2) the use and value of the area adjacent to the property included in the variance will not be affected in a substantially adverse manner; and
>
> (3) the strict application of the terms of the zoning ordinance will result in practical difficulties in the use of the property.[2]

Here, the BZA's preprinted "ballot" on Rafferty's variance application contains the following findings:

> 1. Approval of the variance [will not] be injurious to the public health, safety, morals, and general welfare of the community because: *a larger building could be constructed with multiple tenants. The design elements being provided fit well with the recent development along Paoli Pike.*
>
> 2. The use and value of the area adjacent to the property included in the variance [will not] be affected in a substantially adverse manner because: *the site is currently zoned Neighborhood Commercial and this type of business is permitted.*
>
> 3. The strict application of the terms of the zoning ordinance [will] result in practical difficulties in the use of the property because *another development could be proposed that would be larger and generate more adverse conditions. Thus this proposed development fits satisfactorily on this site.*

Appellant's App. Vol. 2 at 116 (handwritten notations in italics).

---

[2] The statute also permits a zoning ordinance to establish a stricter standard than the "practical difficulties" standard, but Floyd County's zoning ordinance does not do so.

[6]     Contrary to Stiller's assertions, there is sufficient evidence in the record to support each of these findings. First, regarding the BZA's finding that approval of the variance will not be injurious to the public health, safety, morals and general welfare of the community, the evidence indicates that the proposed building is actually smaller than existing buildings in the area and, as emphasized by the BZA, the proposed building is smaller than a multiple-use larger building that would already be allowed on the same site as a matter of right. *Id*. at 63, 122, 125, 132.[3] As restaurants, gas stations, groceries, and other commercial uses are approved for the area, the proposed retail space is totally "in line with the density that is already allowed on the site." *Id*. at 130. The proposed Dollar General store "will generally be pulling traffic from the *existing* traffic that's on Paoli Pike," *id*. (emphasis added), and there is no evidence to suggest that approval of the variance will cause traffic to become injurious to the community.[4] Moreover, there is evidence in the record which indicates that the planned construction of a water detention basin and retaining wall on the property will not injure but would actually serve to improve current drainage and water runoff issues on Paoli Pike. *Id*. at 60, 113, 131. In short,

---

[3] A multiple-use building on the site same could be up to 10,000 square feet. Appellant's App. Vol. 2 at 122, 125.

[4] Rafferty's project engineer, Jason Copperwaite, explained,

> Because there are other Dollar General's [sic] in other places like Georgetown you won't have people coming from Georgetown to go to this Dollar General store. [T]here are Dollar General Stores in New Albany you won't have people coming from New Albany to this Dollar General store. This Dollar General store will be for the residen[ts] of Floyds Knobs, those people that are already trafficking Paoli Pike.

Appellant's App. Vol. 2 at 130.

ample evidence supports the BZA's conclusion that approval of the variance will not be injurious to the public health, safety, morals, and general welfare of the community.

[7] As for the second finding, that the use and value of the area adjacent to the property will not be affected in a substantially adverse manner, it is undisputed, as Rafferty points out, that "retail establishments could be developed there as a matter of right, including those of significantly larger structure size than what [he] was requesting[,]" and that "[t]hose businesses would likewise have lights, deliveries, and people doing business." Appellees' Br. at 15.[5] Indeed, Rafferty submitted a detailed site plan showing that the proposed structure here is a stone and brick building that has "elevated design elements" that fit well within the recent development along Paoli Pike. Appellant's App. Vol. 2 at 60, 89-90, 132. This evidence supports a finding that the requested variance would not affect the use and value of the adjacent area in a substantially adverse manner.

[8] And as for the third finding, that strict application of the terms of the zoning ordinance will result in practical difficulties in the use of the property, Rafferty emphasizes that he purchased the lot "with the sole intention of using the space

---

[5] At the BZA hearing, Rafferty's counsel observed that if

> Dollar General decided half of [the proposed 7500 square feet of retail space] was going to be Dollar General grocery, … and [the other half was going to be] Dollar General general merchandise and split it into two uses we would not even need to be here this evening because the building size is allowed as a matter of right under the neighborhood commercial [zoning rules].

Appellant's App. Vol. 2 at 125. In fact, as already noted, a building of up to 10,000 square feet would be allowed as a matter of right under such circumstances.

for a Dollar General business" and that "[t]he smallest possible prototype for the Dollar General is [7500] square feet." Appellees' Br. at 16. He further notes that he "did not create the prototype and did not have authority to alter the square footage[,]" and that "the denial of the variance would have resulted in [his] 100% economic loss." *Id.* at 16-17; s*ee Reinking v. Metro. Bd. of Zoning App. of Marion Cty.*, 671 N.E.2d 137, 142 (Ind. Ct. App. 1996) ("[T]he purchase of property with knowledge of use restrictions does not prohibit a purchaser from claiming a special or unnecessary hardship, regardless of who owned the property at the time it was burdened.").[6] Significantly, the evidence demonstrates that current approved uses for the site include far larger and more commercially intense uses than Rafferty's proposal. The BZA was well within its discretion to determine that it would constitute an unnecessary hardship to permit those commercially intense uses, but not Rafferty's proposed use.

[9] We conclude that the foregoing facts are more than sufficient to support the BZA's findings. Stiller has failed to show that the quantum of legitimate evidence was so proportionately meager as to lead to the conviction that the finding and decision of the BZA does not rest upon a rational basis. *Burcham*, 883 N.E.2d at 213. Consequently, we affirm.

---

[6] Stiller seizes on Rafferty's counsel's hypothetical about splitting the store into two uses and claims that, "[g]iven such admission, it was impossible for Rafferty or [Ceek] to demonstrate a practical difficulty in the use of the Property in the absence of the grant of the requested variance." Appellant's Br. at 24. But there is no evidence that Dollar General would ever consent to such an arrangement.

Affirmed.

May, J., and Pyle, J., concur.