

IN THE

# Court of Appeals of Indiana

Beaver Gravel Corporation, d/b/a Beaver Materials, et al.

*Appellants-Respondents/Petitioners*

v.

Eros Valdovich, et al.,

*Appellee-Plaintiff*



FILED

Sep 29 2025, 9:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

---

September 29, 2025

Court of Appeals Case No.
24A-PL-2494

Appeal from the Hamilton Superior Court

The Honorable Michael A. Casati, Judge

Trial Court Cause No.
29D01-2311-PL-10391

---

**Opinion by Judge Weissmann**
Judges Bailey and Brown concur.

**Weissmann, Judge.**

[1] Beaver Gravel Corporation (Beaver) applied for a zoning variance to operate a sand and gravel mine in a residential area of Noblesville. Finding Beaver met all five statutory elements required for the variance, the Noblesville Board of Zoning Appeals (BZA) granted it. Neighboring property owners (Neighbors) sought judicial review, and the trial court reversed the BZA's decision, finding it was unsupported by the evidence and contrary to law.

[2] Beaver appeals, claiming the trial court improperly reweighed evidence in reversing the BZA. But even with due deference to the BZA, we find a critical absence of evidence supporting one of the statutory elements required for the variance's approval. Concluding the BZA therefore erred by granting the variance, we affirm the trial court's decision.

## Facts

[3] In 2023, Beaver sought a variance of use to operate a sand and gravel extraction operation on approximately 68 acres of property (the Property) zoned as an R-1 Residential District. The Property was then used for agriculture—one of the few permitted uses beside residences in an R1 zone. Under Noblesville ordinances, sand and gravel extraction is considered an industrial use permitted only in I-3 Extractive Industrial zones and conditionally in I-2 Heavy Industrial zones.

[4] Beaver's proposed operations on the Property would involve a surface excavation mine with soil stockpiles up to 20 feet high, set back from property

lines and bordered with berms as needed. The mine would operate six days a week, starting at 7:00 a.m. All gravel processing would be done off-site at Beaver's other nearby facilities. Beaver proposed to mine the Property for 10 years and then redevelop it, potentially restoring the land to its present agriculture use or developing it for residential use.

The Property (shaded in blue on the map below) is bordered by a residential neighborhood to the north and northwest, estate-style homes on large lots of land to the east, and a horse stable and a soccer club to the south and southwest. The land along most of the west and south sides of the Property is or was previously part of an underground mining operation not run by Beaver (shaded in green). Beaver's other mining and surface extraction activities (shaded in purple) occur nearby but not directly adjacent to the Property.



Appellee's App. Vol. III, p. 56.

[6] The map below depicts the broader area surrounding the Property, with the Property shaded in blue, current or previously mined parcels in green, homes owned by the family that operates Beaver in yellow, and Beaver's mining parcels in purple:



Id. at 51.

[7] After two public hearings, the BZA granted Beaver's variance application. The BZA found that Beaver satisfied all five statutory requirements for a use variance under Indiana Code § 36-7-4-918.4 (Variance Statute)—requirements related to public health and safety, the impact on the value of adjacent areas, the peculiar condition of the property, the unnecessary hardship of strict

compliance with the ordinance, and the interference with the municipality's comprehensive plan. As part of its approval, the BZA imposed multiple conditions on Beaver's use of the Property, including compliance with local noise ordinances and the prohibition of on-site blasting, crushing, or wet processing of gravel.

[8] Following the BZA's decision, Neighbors sought judicial review of the decision under Indiana Code § 36-7-4-1605. The trial court conducted a hearing during which Neighbors challenged the sufficiency of the evidence presented on each of the five statutory elements. Neighbors also claimed that the noise created by Beaver's equipment would violate local noise ordinances. At one point, Neighbors' counsel played an 18-second audio recording of an unidentified dump truck and used a "decibel meter" to show "what 84 decibels sounds like." Tr. Vol. II, pp. 18, 19-20. Beaver objected to the audio recording, emphasizing that this evidence was unverified and was never presented to the BZA. The trial court permitted the recording "as demonstrative only." *Id.* at 20.

[9] The trial court ultimately set aside the BZA's decision on two independent grounds: (1) the BZA's determinations as to each of the five statutory variance elements were unsupported by substantial evidence and unreasonable; and (2) the BZA's decision was contrary to law because the evidence showed that Beaver's operations would violate the local noise ordinances. Beaver appeals the trial court's order reversing the BZA's grant of the variance.

# Discussion and Decision

[10] On appeal, we "stand in the shoes of the trial court" and conduct our review of the BZA decision without deference to the trial court's decision. *Monroe Cnty. Bd. of Zoning Appeals v. Bedford Recycling Inc.*, 241 N.E.3d 1144, 1151 (Ind. Ct. App. 2024) (explaining that appellate and trial courts apply same standard when reviewing BZA decisions).

[11] "Indiana courts treat zoning boards as administrative agencies when reviewing their decisions" and apply a three-tiered standard of review. *Noblesville, Ind. Bd. of Zoning Appeals v. FMG Indpls., LLC*, 217 N.E.3d 510, 513 (Ind. 2023). "For questions of fact, we uphold agency findings that are supported by substantial evidence." *Id.* "For mixed questions of law and fact, we review agency conclusions for their reasonableness." *Id.* "And for questions of law, we decide independently whether the agency action is contrary to law[.]" *Id.*

[12] Under our statutes governing judicial review of zoning decisions, we reverse if the decision was: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to a constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, limitation, or right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence. Ind. Code § 36-7-4-1614(d).

[13] Here, Beaver challenges both bases for the trial court's reversal of the BZA's decision: (1) its finding that the five statutory elements were unsupported by the

evidence and unreasonable; and (2) its determination that the variance would violate the local noise ordinance and therefore was contrary to law. Additionally, Beaver argues that the trial court committed reversible error by considering the unverified audio recording of the dump truck. We address each argument in turn and affirm.

## I. Statutory Variance Elements

[14] Beaver claims the BZA correctly determined that its application met all five statutory requirements for a use variance under the Variance Statute. That statute provides:

> A variance may be approved under this section only upon a determination in writing that:
>
> (1) the approval will not be injurious to the public health, safety, morals, and general welfare of the community;
>
> (2) the use and value of the area adjacent to the property included in the variance will not be affected in a substantially adverse manner;
>
> (3) the need for the variance arises from some condition peculiar to the property involved;
>
> (4) the strict application of the terms of the zoning ordinance will constitute an unnecessary hardship if applied to the property for which the variance is sought; and

(5) the approval does not interfere substantially with the comprehensive plan adopted under the 500 series of this chapter.

Ind. Code § 36-7-4-918.4. All five elements must be demonstrated, and the failure to establish just one element is "sufficient to defeat the [variance] request." *Sam's E., Inc. v. United Energy Corp., Inc.*, 927 N.E.2d 960, 964 (Ind. Ct. App. 2010). We begin with the fourth element, unnecessary hardship, finding it dispositive.

"[W]hether there is an unnecessary hardship justifying the grant of a variance is a question of fact for the board of zoning appeals." *I-465, LLC v. Metro. Bd. of Zoning Appeals Div. II of Marion Cnty.*, 36 N.E.3d 1094, 1102 (Ind. Ct. App. 2015) (citation omitted). We therefore review the BZA's determination of this element for substantial evidence. *See FMG Indpls.*, 217 N.E.3d at 513.[1] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burton v. Bd. of Zoning Appeals of Madison Cnty.*, 174 N.E.3d 202, 215 (Ind. Ct. App. 2021) (citation omitted).

The existence of an unnecessary hardship "is governed by all the relevant factors which, when taken together, indicate the property cannot reasonably be put to a conforming use because of limitations imposed upon it by the

---

[1] The trial court appeared to review this element as a mixed question of law and fact and applied both the "reasonableness" and "substantial evidence" standards. But because we step into the shoes of the trial court and do not defer to its reasoning, this does not impact our analysis. *See Bedford Recycling Inc.*, 241 N.E.3d at 1151.

ordinance." *Light Co. v. Houghton*, 226 N.E.2d 341, 343 (Ind. Ct. App. 1967) (citing *City of East Chicago, Ind. v. Sinclair Refining Co.*, 111 N.E.2d 459, 464-65 (Ind. 1953)). The applicant must also demonstrate that the property "cannot yield a reasonable return if used only for the allowed zoned purpose[.]" *Id.* This standard has been repeatedly cited and applied in subsequent zoning cases. *See, e.g.*, *Bd. of Zoning Appeals of City of Whiting, Lake Cnty. v. McFadden*, 337 N.E.2d 576, 580 (Ind. Ct. App. 1975) (finding record supported BZA's determination that appellants failed to prove unnecessary hardship because they "presented no evidence that the property could not continue to be used profitably as a two-family dwelling as permitted by the zoning ordinance"); *I-465,* 36 N.E.3d at 1102 (citing *McFadden* and *Light Co.*).

[17] Here, the BZA offered the following explanation for its determination that an unnecessary hardship existed:

> The strict application of the terms of the zoning ordinance will constitute an unnecessary hardship if applied to the property for which the variance is sought, because the zoning ordinance does not permit mining. Accordingly, without the variance, the important natural resource which is peculiarly located on this property could not be extracted.
>
> Notably, excluding the single-family residential parcels along Cherry Tree Road, the majority of the parcels touching the subject Real Estate have or are being used for some type of mining, quarrying, or gravel/sand extraction. The properties to the west and south are part of the underground mine being operated by Martin Marietta with the entrance to the mine

located approximately 2400 feet southwest of this property. On the east side of Cherry Tree Road there are a few residences, but east of them along both sides of River Road there are numerous sites that have been mined. The first signs of mining/excavation appear on the 1956 aerial photographs and the area east and to the south have shown mining operations since. **The subject property has to this point been used for agricultural uses, but both 161ˢᵗ Street and Cherry Tree Road are in need to [sic] of extensive repair due to poor soils in the area that have caused subsidence of the road that is resulting in constant repairs/patches. The condition is so poor that it is unlikely that a residential neighborhood in compliance with the zoning ordinance would be allowed to begin construction without significant investment in the road.**

The Conditions/Commitments account for the processing of materials offsite and the transport of materials in a manner that is consistent with the existing infrastructure (and coordination with the county on the same).

Based on the totality of the record evidence, the strict application of the terms of the zoning ordinance will constitute an unnecessary hardship if applied to the property for which the variance is sought, because the natural minerals could not be extracted under the zoning ordinance.

Appellant's App. Vol. III, p. 41-42 (emphasis added).

[18]     Neighbors contend that this finding fails to show that the Property cannot reasonably be put to a conforming use—a critical part of the unnecessary hardship analysis. As currently zoned (R1), the conforming uses of the Property include both residential and agricultural uses. *See* Appellee's App. Vol. 17, pp.108-11 (Noblesville UDO, Appendix C-Official Schedule of Uses, showing

residential and agricultural uses permitted in R-1 Districts).[2] The Property is currently used for agriculture, as both Beaver and the BZA acknowledged. In fact, Beaver listed agriculture (and residential development) as a potential future use after the completion of its excavation. Neighbors argue that "[e]ven if the [Property] cannot be used for a *residential neighborhood*"—as the BZA found—"that does not mean it cannot be used for an individual residence and/or agriculture, both of which are conf[o]rming uses for the [Property]." Appellee's Br., p. 43 (italics in original). We agree.

[19] Beaver does not meaningfully address this evidentiary gap. Instead, Beaver claims the trial court's finding that the Property is and can be put to conforming residential and agriculture uses "was contradicted by the BZA's finding (which was supported by Record evidence) that the soil and weight restrictions on Cherry Tree Road rendered it unlikely that the Property could be put to a conforming use." Appellant's Br., p. 48. But this misstates the BZA's findings, which were not so comprehensive. The BZA found only that "a residential neighborhood" was unlikely to be constructed without first fixing the road, and it did not address other conforming uses, as Beaver suggests. Appellant's App. Vol. III, p. 42.

[20] Beaver's only other argument on this point is a short aside in its reply brief. There, Beaver states: "[T]hat the Property could be used for agriculture does not

---

[2] Under the UDO, other permitted uses in R-1 districts are public parks and playgrounds, cemeteries, government offices, police and fire stations, neighborhood clubhouses, and residential care homes.

'foreclose[]' a finding of *peculiarity*—and why would it? What a property could be used for has no bearing on whether certain of its conditions render it uniquely situated for another, different use—hence, the request for a variance." Appellant's Reply Br., p. 26 n.9 (emphasis added). But Beaver shifts the argument to the separate variance element of peculiarity, rather than responding to the point that the Property's potential to be put to a conforming use defeats the requirement of unnecessary hardship. Additionally, Beaver's argument appears to concede that the Property could be used for agriculture.

[21] The BZA's other findings on the unnecessary hardship element cannot correct this fundamental shortcoming. The challenges of the sand and gravel industry are unrelated to whether the Property can yield a reasonable return if used only for the allowed zoned purpose. *See Light Co.*, 226 N.E.2d at 343 (affirming the trial court's reversal of variance that was granted in part to keep workers employed because loss of employment "is not a hardship which arises out of the application of the zoning ordinance"). Furthermore, "economic opportunity or loss [cannot] enter into the determination of the existence of unnecessary hardship[.]" *I-465*, 36 N.E.3d at 1102 (quoting *Light Co.*, 226 N.E.2d at 343) (first brackets in original).

[22] We are also unpersuaded by Beaver's fairness-based argument to demonstrate unnecessary hardship—that other mining activities already occur in the vicinity so there is "no reason to treat Beaver's proposed operations any differently." Appellant's Br., p. 47. Beaver cites to *I-465* for support, but we find the outcome

of that case readily distinguishable. 36 N.E.3d 1094. In *I-465*, the petitioner requested a variance to operate a pet hotel in a commercial district that did not permit dog boarding. However, the existing zoning of the parcel permitted other "more intense" uses like bars, adult entertainment, and gas stations. *Id.* at 1102. This Court concluded that "[t]he BZA was within its discretion to determine that it would constitute an unnecessary hardship to permit those commercially intense uses, but not permit" a dog hotel. *Id.* However, this same logic cannot be applied here as extractive surface mining is a far more intense use than what is presently permitted: residential and agricultural uses.

[23] We similarly reject Beaver's comparison to *Burcham v. Metro. Bd. of Zoning Appeals Div. I of Marion Cnty.*, 883 N.E.2d 204 (Ind. Ct. App. 2008). There, the BZA granted a variance to allow a fireworks store to continue operating in the same location it had been in for 20 years. This Court found an unnecessary hardship existed since, "without relief the site cannot be utilized or maintained." *Id.* at 217. Here, there is no evidence in the record that the Property itself has a history of mining or that it cannot be used or maintained without the variance. The BZA acknowledged the Property is currently used for agriculture and made no finding that such use could not continue. *See McFadden*, 337 N.E.2d at 580 (finding no unnecessary hardship where appellant "presented no evidence that the property could not continue to be used profitably as a two-family dwelling as permitted by the zoning ordinance").

[24] Given the foregoing, we conclude that the BZA's finding of an unnecessary hardship is unsupported by substantial evidence. *See* Ind. Code § 36-7-4-1614(d)(5). To hold otherwise would be contrary to our case law. *Cf. Fail v. LaPorte Cnty. Bd. of Zoning Appeals*, 355 N.E.2d 455, 460 (Ind. Ct. App. 1976) (finding evidence supported BZA's determination of unnecessary hardship where property was zoned agricultural but was "not suitable for farming" due to its topography and poor soil quality); *Suess v. Vogelgesang*, 281 N.E.2d 536, 541 (Ind. Ct. App. 1972) (finding same where property at issue was zoned residential but "nearly impossible" to sell as it had been on the market unsuccessfully for a long time). We reach this conclusion without reweighing or reassessing evidence but by merely identifying the absence of evidence on a critical requirement.

[25] This failure to demonstrate the element of unnecessary hardship is alone sufficient to warrant reversal of the BZA's decision to grant the variance. *See Sam's E., Inc.*, 927 N.E.2d at 964 (noting that failure to establish just one element is "sufficient to defeat the [variance] request"). We therefore need not address the other four variance elements.[3]

---

[3] Beaver also takes issue with the trial court's second, alternate basis for reversing the BZA's decision: that the variance would be contrary to law because the evidence showed Beaver's operations would violate the local noise ordinance. We need not address this claim because we have already independently determined that reversal of the variance is appropriate based on the failure to demonstrate all five statutory elements.

## II. Demonstrative Evidence

Finally, Beaver claims that the trial court committed reversible error by considering an unverified 18-second audio clip of a dump truck noise, arguing that the court did not have the authority to accept this evidence because it was never presented to the BZA. Beaver contends that judicial review "must be confined to the board record" and can only be supplemented in specific circumstances not present here. Appellant's Br., p. 60 (citing Ind. Code §§ 36-7-4-1611, -1612(a)).

However, we need not resolve this question because any such error in the consideration of this audio recording was harmless. An error or defect in a proceeding "must" be disregarded if it "does not affect the substantial rights of the parties." Ind. Trial Rule 61. The challenged audio recording is entirely unrelated to our basis for reversal—the failure to demonstrate unnecessary hardship—which turns on whether the property can reasonably be put to conforming use, not whether mining operations would be loud or disruptive. Moreover, we stand in the shoes of the trial court in our review and owe its decision no deference. *See Bedford Recycling Inc.*, 241 N.E.3d at 1151. Therefore, even the improper consideration of this audio clip by the trial court would not affect the outcome and was therefore harmless.

## Conclusion

Because Beaver failed to present evidence that the Property cannot reasonably be put to a conforming use, the BZA erred in determining that the unnecessary

hardship element was met. This failure alone is sufficient to require reversal of the BZA decision, as all five variance requirements must be satisfied for a variance to be granted. Accordingly, the BZA's decision must be set aside as unsupported by substantial evidence under Indiana Code § 36-7-4-1614(d)(5).

[29] Affirmed.

Bailey, J., and Brown, J., concur.

ATTORNEYS FOR APPELLANTS

Jenny R. Buchheit
Timothy E. Ochs
Andrew J. Miroff
Abby V. DeMare
Ice Miller LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEES

Raegan M. Gibson
The Gibson Legal Group
Indianapolis, Indiana